## THORNBURG, IN RE, WRIT OF HABEAS CORPUS FOR

Ohio Appeals, 8th Dist, Cuyahoga Co

. Decided Nov 2, 1936

M. A. Picciano, Cleveland, for relator.

Alfred Clum, Director of Law, Cleveland, Perry A. Frey, Cleveland, and Perry B. Jackson, Cleveland, assistant directors of law, for respondent.

## OPINION

By LEVINE, J.

Wilbur Thornburg was arrested on September 25, 1936 and charged with the vio-

lation to §3027-1 of the Municipal Code of Cleveland. The affidavit filed against the relator reads:

"On or about the 25th day of September, A.D., 1936, at the said city and county one Wilbur Thornburg did unlawfully distribute cards advertising photographs by handing same to pedestrians upon the public ground within the congested district of the city of Cleveland, to-wit, on the sidewalk in front of street number 1015 Euclid Avenue. and further deponent says not; contrary to the form of an ordinance of said city in such cases made and provided."

This affidavit was predicated upon §3027-1 of the Municipal Code of Cleveland which reads:

"The distribution of handbills, circulars, cards or other advertisements, drugs, patent medicines, or combination of drugs, or samples thereof, samples of foodstuffs, chewing gum or other confections, by handing the same to pedestrians upon any street, lane, alley or public ground within a congested district of the city, or by the placing of the same in or upon any motor vehicle in use upon or parked upon the streets within the said congested district, is hereby declared a nuisance and unlawful. * * * Nothing herein contained shall be construed to apply to the sale of newspapers."

This petition for writ of habeas corpus challenges the validity of the ordinance and also its applicability to the present case. In the agreed statement of facts submitted by counsel we find the following:

"On September 25, 1936, while in company with Serg't. Bammerlin and Patrolman Andrew Smith, No. 681, we arrested Wilbur Thornburg, 995 East 72nd Street, in front of 1015 Euclid Avenue for violating the Hand Bill Ordinance.

"Thornburg had a camera (DeVry) in front of him taking snapshots of pedestrians on the sidewalk as they came towards him and then would pass out a card advertising the photograph and the price to be paid for the photo. During the period of fifteen minutes from 2:30 to 2:45 P. M. he passed out four cards. I saw him pass out the four cards, three to pedestrians and the fourth to Patrolman Smith. Patrolman Smith asked Thornburg, in my presence, if he had a permit and he said he did not. I was standing about four feet away from Patrolman Smith when Thornburg handed him the card, after taking his photo."

We also find the following stipulation: "It is conceded that immediately following the taking of the pictures by the relator, he proceeded to hand each person whose picture he had taken, a card about 2½ inches wide and 5½ inches long. These cards bore serial numbers to distinguish them from other similar cards which the relator passed out to other persons, and the printed matter thereon in effect advised the person to whom it was handed, that his or her picture had been taken on a professional movie camera and that by sending in twenty-five (25c) cents with the card, said person would receive three of the pictures of himself or herself.

"No cards were to be seen upon the ground or sidewalk at or near the place where same had been handed out, and it is conceded that the cards were not given promiscuously, but the distribution thereof was limited to those persons only, whose pictures had been taken and who appeared to desire the same and took the same willingly. No person was attempted to be influenced into accepting the card, and it was entirely up to the person to whom the card was handed whether or not he or she would accept it."

"It is further conceded that at the time of the arrest of the relator, there was no law—state or municipal—prohibiting the taking of these pictures, and that the act of the relator in taking the pictures was a legitimate act on his part. The violation alleged to have been committed by him consisted—not in the taking of the pictures—but in the handing out of the card after the picture had been taken."

There are various points in brief of relator which we do not consider of importance in deciding the matter before us. We shall confine our attention to the point urged by counsel for relator, namely, that this ordinance, as it now reads, is not a reasonable exercise of the police power but it exceeds the same and it is therefore of no validity.

Under the agreed statement of facts it must be taken as conceded that the relator was engaged in a lawful business when he took photographs of pedestrians. The only question presented to us is the validity or applicability of the ordinance which prohibits the handing out of the cards after the picture had been taken.

As a general rule, whatever is contrary to public policy or inimical to public interest is subject to the police power of the state. In the exercise of this authority the

legislative bodies may regulate persons and property in all matters relating to the public health, the public morals and the public safety. It has been well said that this police power of the state or sovereign is the right of self-preservation and self-protection; and it is to the state, as it is to the individual the first and natural right. This power, however, is limited and confined by the constitutional provision that the citizen shall not thereby unreasonably, arbitrarily, or without due process of law, be deprived of his life, liberty and property. The constitutional right of the citizen cannot be abridged or destroyed under the guise of police regulation. It has accordingly been held that legislative bodies cannot, by mere declaration, make that a nuisance which is not in fact or in truth a nuisance or akin thereto. That which has none of the elements or characteristics of a nuisance and has no tendency to injure the public health, the public morals, the public safety, or the public interests, cannot be made a nuisance by the legislature, under the guise of police regulation declaring it such.

The Bills of Rights or Constitutional provisions in the nature thereof, in all the American constitutions, serve effectually to prevent such legislation in the states or in the United States.

See First Avenue Coal & Lumber Co. v T. F. Johnson, 32 (N.S.) L.R.A. Ala. Sup. Ct. 522.

"The authorities are clear that the right to conduct a lawful business is a property right and that incident thereto is the right to appeal to the public for patronage * * *." **Cleveland Shopping News Co. v City of Lorain et, 37 O.L.R. 527, (13 Abs 265).**

The right to conduct a lawful business carries with it the right to circulate printed matter, advertising wares and merchandise. The ordinance under consideration must be viewed in the light of the settled law. We can well see that the part of the ordinance which declares the distribution of drugs, patent medicines or combination of drugs or samples of food stuffs, chewing gum or other confections, by handing the same to pedestrians upon any street, may well be said to come under the police power as it protects public health. The indiscriminate distribution of such articles may have a tendency to injure the public health. To this extent we are inclined to uphold the ordinance under consideration. It will

be seen, however, that the ordinance contains a general inhibition against the distribution of handbills, circulars, cards or other advertisements. Since it is recognized that the right to engage in a lawful business is a property right and that it carries with it the right to appeal to the public for patronage, through bills, circulars, cards or other advertising matter, it becomes quite apparent that to declare the distribution of such advertising matter, which is an incident of a lawful business, a nuisance as a matter of law, amounts to an infringement of the constitutional provision that "the citizen shall not thereby unreasonably, arbitrarily, or without due process of law, be deprived of his * * * property."

The ordinance declares such distribution upon the streets or sidewalks within the defined congested districts of the city, a nuisance as a matter of law. If the ordinance has for its purpose the regulation of traffic and aims to prevent congestion of traffic, it would, without question, have the power to so declare. If the ordinance contained the phrase "so as to obstruct the free flow of traffic on the sidewalks or streets" it would bring it within the rule above stated. As the ordinance now reads it prohibits the distribution of handbills, circulars, cards and other advertisements within the congested districts, regardless of whether it has a tendency to obstruct traffic or not. Under its wording, if any of this advertising matter is distributed within the congested district at any time during the early hours of the morning, when there is little or no traffic, or when there are but few people on the sidewalk, it is nevertheless declared a nuisance and prohibited.

The legislative body of Cleveland cannot, under the guise of the exercise of police power, declare that a nuisance as a matter of law, which is not a nuisance as a matter of fact but may become so by reason of circumstances only. Counsel for relator cites the case of People v Armstrong, 73 Mich. 288, wherein the court held:

"1. An ordinance of the city of Detroit prohibiting the circulation, distribution or giving away of circulars, handbills or advertising cards of any description, in or upon any of the public streets or alleys of said city is held not to come within the power granted by its charter, and also to be unreasonable and unwarranted."

The city of Cleveland seeks to differentiate our local ordinance from the ordinance of the city of Detroit in that the ordinance of the city of Detroit includes the entire city, whereas the Cleveland ordinance confines the prohibited act to congested districts only. It seems to us, however, that whether it applies to the entire city or only part thereof, the underlying objection nevertheless exists in both instances; the requirement that the ordinance must be reasonably necessary for the preservation of the public health, morals or safety, applies to both.

In the opinion in People v Armstrong, supra, on page 292, the court said:

"Corporations derive all their power from legislative acts, and they can pass no ordinance which conflicts with the charter. Where the legislature, in terms, confers upon a municipal corporation the power to pass ordinances of a specified and defined character, if the power thus delegated be not in conflict with the constitution, an ordinance passed pursuant thereto cannot be impeached as invalid because it would have been regarded as unreasonable if it had been passed under the incidental power of the corporation. * * * But where the power to legislate on a given subject is conferred, but the mode of its exercise is not prescribed, then the ordinance passed in pursuance thereof, must be a reasonable exercise of the power or it will be pronounced invalid." 1 Dill Mun. Corp., page 262.

The city of Cleveland cites the case of People v Horwitz, 27 N. Y. Crim. Rep. 237, wherein the validity of the folowing ordinance was sustained:

"That no person shall throw, cast, or distribute in or upon any of the streets, avenues or public places, or in front yards or stoops, any handbills, circulars, cards or other advertising matter whatsoever."

The opinion of the court in the New York case refuses to follow the decision of People v Armstrong, supra, in the following language:

"Insofar as this Michigan case may seem to hold contrary to the opinion herein expressed, I feel that it is not in accord with the weight of the authority and not binding upon the case here."

We are of the opinion that the reasoning of the Michigan Supreme Court in defining the limitations upon the police power is sound and expresses the tendency of our own courts in Ohio.

In **Wondrak v Kelley, 129 Oh St 268,** our Supreme Court held:—

"1. If it is clear that the police regulations adopted by municipal council are arbitrary or unreasonable and have no substantial relation to the public health, morals, safety or public welfare, it becomes the duty of the court to declare such regulations to be invalid.

"2. Aesthetic reasons alone, unrelated to the requirements of the public health, safety or welfare, will not justify the exercise of the police power."

It is therefore our conclusion:

1. Insofar as the ordinance prohibits the distribution of drugs, patent medicines, or combination of drugs, or samples thereof, samples of food stuffs, chewing gum or other confections by handing the same to pedestrians upon any street within the prohibited area, the same is a valid exercise of the police power because it relates to the public health.

2. The ordinance does not apply to the distribution of handbills, circulars, cards or other advertisements which are merely an incident to the conduct of a lawful business.

3. If it is the intention of the ordinance to prohibit the same that it would be an invasion of the constitutional provision that a "citizen shall not thereby unreasonably, arbitrarily, or without the due process of law, be deprived of his * * * property."

4. It is within the power of the legislative body, merely as a traffic regulation, to prohibit such distribution, if it be done so as to obstruct the free flow of traffic upon the sidewalks or streets.

5. It is not within the power of the city council to prohibit the distribution of handbills, circulars, cards or other advertisements which are incident to the conduct of a lawful business when the same does not have a tendency to obstruct the free flow of traffic.

In view of the above consideration, the writ will be issued. A journal entry may be drawn accordingly.

LIEGHLEY, PJ, concurs.
TERRELL, J, dissents.

### DISSENTING OPINION

By TERRELL, J.

It appears to me that the ordinance in question is a proper ordinance and within the exercise of the police power by the council of the city of Cleveland. It is not necesary in an ordinance to state the purposes for which it is enacted or to state the evils sought to be overcome.

If from a reading of an ordinance the intendment thereof can be gathered that the purpose thereof is for the general safety and health of the citizens of the community, it is within the exercise of the police powers of the city. It can fairly be seen, from a reading of the ordinance in question, that two of the purposes for the enactment of this ordinance are to prevent congestion of pedestrian traffic upon the sidewalks and streets in the congested districts of the city, and that it is sought to prevent the unnecessary cluttering of sidewalks and streets in congested districts with unwanted advertising matter. It reasonably follows that there is a great likelihood that advertising cards, handbills, and circulars that are indiscriminately distributed free to people upon the public highways, will result in cluttering the streets with such cards and papers which are unwanted. There is also a great likelihood that should the citizens deem such cards and circulars or other matter to have any value that there might be a great clamor for the free gift thereof which would tend to cause obstructions of the sidewalks and the streets.

No person has an inherent right to conduct his business upon the public streets and sidewalks of a city. The distributing of advertising circulars and cards is part of a business. The city council in the exercise of its police power may prohibit the carrying on of such business on the public streets and highways.

It is my opinion that the ordinance is constitutional and that the affidavit which charges defendant with unlawfully distributing advertising cards upon the streets, charges an offense under this ordinance.