[Civ. No. 13391.   Second Dist., Div. One.   Feb. 17, 1942.]

MARION J. PITTSFORD et al., Respondents, v. CITY OF LOS ANGELES (a Municipal Corporation) et al., Appellants.

Ray L. Chesebro, City Attorney, W. Jos. McFarland, Assistant City Attorney, and Clyde P. Harrell, Jr., and John L. Bland, Deputies City Attorney, for Appellants.

Mott & Grant and A. A. Goldstone for Respondents.

DORAN, J.—This action arose under circumstances similar to those in *Portnoy* v. *Hohmann,* Civil No. 13283, this day decided, *ante,* p. 22 [122 Pac. (2d) 533], but the ordinance sought to be enforced against plaintiffs in the instant action is section 28.01.1 of the Los Angeles Municipal Code. The defendant city and its chief of police here appeal from the judgment granting a permanent injunction against enforcement of the ordinance in question as to respondents, which judgment was

entered after demurrer to respondents' complaint was overruled and appellants had waived the right to answer. The complaint prayed for the relief granted upon specific allegations as to the unconstitutionality of the ordinance, to wit: That it constitutes a denial to plaintiffs of the right of free press and the right of free speech, in violation of the First and Fourteenth Amendments to the Constitution of the United States, and section 9 of article I of the Constitution of the State of California; that it denies plaintiffs the equal protection of the laws and grants privileges to one class of citizens not accorded to all citizens similarly situated, in violation of the Fourteenth Amendment of the United States Constitution and of section 21 of article I of the Constitution of the State of California; that it constitutes an unreasonable, unwarranted, arbitrary and discriminatory regulation having no substantial relation to the public health, morals, safety, or welfare, in violation of the Fourteenth Amendment of the Constitution of the United States; and that it deprives plaintiffs of their property and their property rights without due process of law, in violation of the Fourteenth Amendment to the United States Constitution and section 13 of article IV (sic) of the Constitution of the State of California.

Respondents' business was the same as that of the respondent in *Portnoy* v. *Hohmann, supra,* and in their complaint respondents described the operation of their business as follows: ". . . plaintiffs employ photographers, the number of whom varies from time to time, and said photographers are equipped by plaintiffs with motion picture cameras; that pictures are taken by said photographers of pedestrians on the sidewalks of the City of Los Angeles, and simultaneously with the taking of a picture of a pedestrian the photographer offers to the person whose picture has been taken an order blank in the form of a card, together with an envelope bearing the address of plaintiffs' place of business . . . that each card bears a serial number for the purpose of enabling plaintiffs to identify the picture which has been taken, and the person whose picture has been taken and to whom the card is handed is informed by the printing on said card that by inserting his or her name and address on said card and mailing the same in the envelope accompanying it, together with twenty-five cents and three cents postage, said person will receive from plaintiffs an enlargement of the picture which has been taken. . . . That said order blanks and envelopes are not thrown on the sidewalks or streets, nor are they offered or handed to pedestrians promis-

cuously by said photographers, but are offered and handed to those persons only whose pictures have been taken and who are willing to and voluntarily accept the same."

Section 28.01.1 of the Los Angeles Municipal Code, by virtue of which the city sought to prevent distribution of the order blanks and envelopes in question, reads as follows:

"(a) No person shall, upon any street, sidewalk or park, cast, throw or deposit, or distribute among pedestrians or to persons in vehicles, any commercial advertising handbill, or any handbill distributed for the purpose of advertising any merchandise, commodity, property, business, service, art, or skill, offered, sold or rendered for hire, reward, price, trade or profit.

"(b) This section shall not be deemed or construed to prohibit or restrict the distribution of written or printed matter devoted to the expression of views, opinions, beliefs or contentions relating to religious, political or sociological subjects, or to public or civic affairs, or to labor disputes or other controversies, or to community, state, regional, national or international affairs, or which treat of any social or economic order, or which relate to the arts or sciences; or which are aimed to redress any grievance, or which otherwise are not distributed for the purpose of soliciting business, trade or custom; nor shall the terms of subsection (a) be deemed to include the printed notice of an event which is not arranged for profit or to stimulate the business, trade, or traffic of the person who causes the dissemination of the notice, even though a monetary contribution of an admission fee be requested or accepted in connection with such event."

Appellants contend that a municipality may prohibit the distribution of commercial advertising matter upon its streets, and that failure to prohibit distribution of handbills upon religious, political and scientific subjects does not render such an ordinance invalid; that the ordinance in question does not take the property of plaintiffs and respondents without due process of law; and, further, that plaintiffs and respondents have no constitutional right to conduct their business upon the public streets. Respondents here raise substantially the same objections to the ordinance as those set forth in their complaint, noted above, and state that the question is whether a municipality may, by ordinance, prohibit the distribution upon its

streets of commercial advertising of a lawful business to persons willing to accept it. That is a correct statement of the question involved. It is to be noted that the ordinance in question does not seek to classify commercial interests or enterprises in the use of the city's streets for distribution of advertising matter; the distinction is expressly drawn between commercial and non-commercial use of the streets for that purpose. It is for this reason, no doubt, that respondents strongly rely upon their contention that the ordinance abridges the exercise of free speech and a free press. In fact, respondents contend that the prevention of the use of the city streets for business activities is not an issue in the case at bar. Respondents' argument that the ordinance denies equal protection of the laws is based upon the claim that the attempted distinction between commercial and non-commercial handbills is arbitrary; and while they concede that a municipality under its police power may enact ordinances regulating the use of the streets, respondents contend that the boundaries of control of municipalities over the distribution of handbills upon the public streets are clearly stated in *Lovell* v. *City of Griffin*, 303 U. S. 444 [58 Sup. Ct. 666, 82 L. Ed. 949] ; *Hague* v. *C. I. O.*, 307 U. S. 496 [59 Sup. Ct. 954, 83 L. Ed. 1423] ; and *Schneider* v. *State (Town of Irvington)*, 308 U. S. 147 [60 Sup. Ct. 146, 84 L. Ed. 155] ; that under those cases the control is limited to regulating the exercise of the right to prevent its abuse, but the right itself cannot be denied. In all of these cases so-called handbill or similar ordinances were held invalid upon the ground that they violated the constitutional guaranties of freedom of speech and freedom of the press. Each of these cases was concerned with an attempted exercise of either a political, civic, social or other closely related right; and in none of the cases cited were the individuals in question engaged or connected with any commercial activity. The ordinances in these cited leaflet cases were broad in scope and made no distinction between commercial and non-commercial handbills. Respondents rely particularly upon *Lovell* v. *City of Griffin, supra.* That case was concerned with an ordinance which prohibited the distribution of literature of any kind, anywhere, at any time, without a permit, and involved a prosecution thereunder of a person distributing religious literature. The United States Supreme Court held the ordinance invalid on its face because of its scope, stating: ''There is thus no restriction in its application with

respect to time or place. It is not limited to ways which might be regarded as inconsistent with the maintenance of public order, or as involving disorderly conduct, the molestation of the inhabitants, or the misuse or littering of the streets.'' Nothing is contained in the opinion in the Lovell case, either expressly or by inference, to aid in the determination of the question here at bar. Certain statements in the opinion in *Schneider* v. *State, supra,* are more significant. It is there stated:

''Although a municipality may enact regulations in the interest of the public safety, health, welfare or convenience, these may not abridge the individual liberties secured by the Constitution to those who wish to speak, write, print or circulate information or opinion.

*''Municipal authorities, as trustees for the public, have the duty to keep their communities' streets open and available for movement of people and property, the primary purpose to which the streets are dedicated.* So long as legislation to this end does not abridge the constitutional liberty of one rightfully upon the street to impart information through speech or the distribution of literature, it may lawfully regulate the conduct of those using the streets. For example, a person could not exercise this liberty by taking his stand in the middle of a crowded street, contrary to traffic regulations, and maintain his position to the stoppage of all traffic; a group of distributors could not insist upon a constitutional right to form a cordon across the street and to allow no pedestrian to pass who did not accept a tendered leaflet; nor does the guarantee of freedom of speech or of the press deprive a municipality of power to enact regulations against throwing literature broadcast in the streets. Prohibition of such conduct would not abridge the constitutional liberty since such activity bears no necessary relationship to the freedom to speak, write, print or distribute information or opinion. . . .

''We are of opinion that the purpose to keep the streets clean and of good appearance is insufficient to justify an ordinance which prohibits a person rightfully on a public street from handing literature to one willing to receive it.'' (Italics added.)

One of the ordinances involved in the Schneider case required a permit to solicit or express views from door to door. Of this the court said: ''We are not to be taken as

holding that commercial soliciting and canvassing may not be subjected to such regulation as the ordinance requires.'' In this instance the petitioner's motive in calling from door to door was religious. Of petitioner's activities the court stated: ''We do hold, however, that the ordinance in question, as applied to the petitioner's conduct, is void, and she cannot be punished for acting without a permit.'' This may be taken as indicating that the United States Supreme Court recognized a distinction between commercial and non-commercial solicitations, at least as far as requirements for a permit are concerned. Moreover, the court in the Schneider case clearly held that as to the petitioner's religious activities the ordinance, in requiring a permit therefor, abridged freedom of speech. Since the court saw fit to draw a distinction between petitioner's actions and those of commercial canvassing, it is proper to conclude that the ordinance there involved would not be held to abridge freedom of speech when applied to commercial solicitations.

The conduct of strictly commercial activities may under certain circumstances involve the exercise of free speech and a free press, and under such circumstances prohibition of certain commercial practices might conceivably be held to abridge these constitutional rights. *People* v. *Osborne,* 17 Cal. App. (2d) (Supp.) 771 [59 Pac. (2d) 1083], concerned an ordinance which prohibited the advertising of prices of barbers' services or the posting of a price list in a barber shop so as to be seen from the street. The appellate department of the superior court held that the ordinance violated the right of property and of contract and impaired freedom of speech and of the press. However, *People* v. *Osborne, supra,* was concerned with the validity of restrictions on the posting or publication of prices, a question which has different ramifications than that of the use of public streets for the distribution of commercial handbills. Moreover, regardless of what particular constitutional right or freedom was involved in the case last cited the ordinance there in question obviously bore no reasonable relation to the public morals, peace, safety, health or general welfare, and, on that ground alone, constituted an unreasonable exercise of police power. It does not follow that where an ordinance regulating or prohibiting the transaction of business, or certain practices in connection with the trans-

action of business upon the public streets may be said to bear a reasonable relation to the public welfare, such an ordinance may be set aside upon the ground that it encroaches upon liberty of speech and of the press. Such liberties in connection with commercial activities may ordinarily be exercised in some other manner than upon the public streets.

It may be seen then that there is a real basis for distinction between the exercise of such constitutional rights when in connection with ordinary business activities and the exercise of those same rights when in relation to public expressions of opinion upon political, religious, social and economic questions, in so far as regulation and control thereof under the police power is concerned. As far as general expressions of opinion are concerned, public places frequently afford the only forum where free speech may be exercised. Under such circumstances, prohibition of use of the streets for this purpose at once constitutes an abridgment of the right of free speech and a violation of its constitutional guaranty. On the other hand, prohibition of the use of public places for purposes of commercial advertising, assuming without deciding that such advertising embodies principles of free speech and a free press, may not so readily be said to abridge constitutional rights in this respect. Other channels of expression of equal value may still be left open to the commercial advertiser. Consequently, what would constitute actual prohibition of expressions of opinion when applied to the public at large might only serve as a reasonable regulation when applied to matters of commercial advertising. The place for the conduct of a private business is upon private property; and it has been said that there is no vested right to do business upon the public streets. ''. . . the highways of the state are public property. They are established and maintained at public expense for the use of the whole people, primarily as avenues of communication for their private uses, and their use for private gain is 'special and extraordinary.' Having that consideration in mind, it is not only within the power of the state, but its imperative duty to so regulate their use for private gain, that it may not materially impair or destroy their usefulness as avenues of communication adequate and available for the use of all citizens for their own proper and private purposes.'' *Parlett Co-*

*Operative* v. *Tidewater Lines,* 164 Md. 405 [165 Atl. 313, 317], citing *Stephenson* v. *Binford,* 287 U. S. 251, 264 [53 Sup. Ct. 181, 77 L. Ed. 288, 294, 87 A. L. R. 721]. And more appropriately, see: *State* v. *Barbelais,* 101 Me. 512 [64 Atl. 881]; *Ex Parte Bradshaw,* 70 Tex. Cr. Rep. 166 [159 S. W. 259], and the dissenting opinion *In re Thornburg,* (*Court of Appeals, Ohio, Cuyahoga Co.*) 55 Ohio App. 229 [9 N. E. (2d) 516]. Because of the conditions generally attendant upon the exercise of free speech and freedom of the press, and in the light of the recent decisions of the United States Supreme Court, above cited, it may well be said that the public at large has a vested right to the exercise of these constitutional freedoms in public places; but there is sufficient basis, both in logic and in reality, for declining to extend such a doctrine to the protection of purely private commercial activities conducted upon public property. "Nor is it an objection to the validity of such an ordinance regulating the use of the streets, that the acts prohibited would not in and of themselves necessarily obstruct travel, or in any way create a nuisance. The carrying on of trade or business in the public streets by one, or by a few persons, might not be of sufficient consequence to materially obstruct the public travel, while, if the same thing should be done by many, it might create a serious obstruction and nuisance, and what may be done by one in this respect, all must have an equal right to do." (*State* v. *Barbelais, supra.*) Though a regulation of business conducted upon the public streets may adversely affect certain individuals whose commercial welfare is peculiarly dependent upon such usage, this circumstance affords no argument against the validity of an ordinance otherwise bearing a reasonable relation to the public health, safety and general welfare, if the ordinance in question adopts a sound method of classification. (See: *San Francisco Shopping News Co.* v. *City of South San Francisco,* 69 Fed. (2d) 879 at p. 890.)

Appellants concede that the purpose of the ordinance in question is to prevent the littering of the streets. Respondents point out that their distribution of forms and envelopes was limited to persons willing to receive the same. The fact that the order blanks in question were handed to persons willing for the moment to accept them is of little or no importance here, since it may be recognized as a matter of common knowledge that after a brief perusal or glance at the card or blank

many of the persons receiving such a card would be apt to cast it into the street. Nor, under the circumstances here presented, could it be a valid argument to contend that the proper remedy would be to arrest and punish those who threw the cards away. It should again be pointed out that the instant case does not involve the question of the general right of persons to express their views and opinions on all subjects in public places. The question here involved is the narrower one of the right to distribute commercial advertising matter upon public streets and thoroughfares. It is difficult to see how the distribution of commercial order blanks and return envelopes for the purchase of photographs embodies the principles of freedom of speech and freedom of the press; but, as already indicated above, the assumption that such principles are involved would have little effect upon the determination of the question presented.

In *Mutual Film Corp.* v. *Industrial Comm. of Ohio,* 236 U. S. 230 [35 Sup. Ct. 387, 59 L. Ed. 552 at p. 560], it is said, in speaking of cases upholding the police power in granting or withholding licenses for exhibition of motion pictures: ''It seems not to have occurred to anybody in the cited cases that freedom of opinion was repressed in the exertion of the power which was illustrated. The rights of property were only considered as involved. It cannot be put out of view that the exhibition of moving pictures is a business, pure and simple, originated and conducted for profit, like other spectacles, not to be regarded, nor intended to be regarded by the Ohio Constitution, we think, as part of the press of the country, or as organs of public opinion.''

Respondents attempt to distinguish the question of the right to distribute their order blanks on the streets from that of regulating or prohibiting the photographic or any other business upon the public streets. This distinction is attempted because the ordinance does not seek to prevent the taking of photographs on the street, but only has the effect of preventing the distribution of literature on the streets in connection with the pictures taken. However the situation may be viewed, the effect of the ordinance is to regulate business conducted on the streets. As far as respondents' business is concerned respondents are permitted to take pictures upon the streets but are not permitted to distribute literature, applications or order blanks in connection therewith. The distribution of the

order blanks and cards in the case at bar must necessarily be viewed as an incident to the enjoyment of an interest in property, the property being the "candid camera" business. In the final analysis the problem here presented should be approached from that standpoint rather than from any consideration of the principles of freedom of speech and of the press, which, as already pointed out, are not material to the question, nor particularly relevant. It is to be noted that in all the cases, cited by the parties herein or found upon review of the question, which concern the validity of a handbill ordinance as applied to a strictly commercial activity, the courts have considered the question in the light of a regulation or prohibition of a property right rather than that of freedom of speech or press.

One possible exception may be found in *Chrestensen* v. *Valentine,* 122 Fed. (2d) 511, in which case, however, the United States Supreme Court granted certiorari in November, 1941; and that case has not yet been heard by the Supreme Court. The question there involved is somewhat different from that in the case at bar. The ordinance there was a section of the Sanitary Code of New York City to the same effect as the ordinance here; but the handbill in the Chrestensen case was one containing a purely commercial notice on one side, advertising the exhibition of a submarine, coupled with a notice on the other side of the bill protesting the refusal on the part of city authorities of the use of a certain dock for the exhibition. The United States Circuit Court held in the majority opinion that the hybrid nature of the handbill, when not shown to be a subterfuge, prevented its falling within the prohibition of the ordinance. The majority of the court also expressed the opinion that absolute prohibition of commercial handbills seemed to be of doubtful validity, but preferred to rest its decision on the ground first stated. Circuit Judge Frank, however, in a strong dissent, was of the opinion that the handbill in question, though embodying a protest in the nature of an exercise of free speech, actually constituted two separable matters; and that the portion of the handbill which was of a purely commercial nature came within the prohibition of the ordinance; and that the constitutional guaranty of free speech does not render unconstitutional the prohibition of the distribution on the city's streets of such a purely commercial advertisement merely because it is deliberately coupled with a

totally distinct and easily separable exercise of the privilege of free speech.[1]

*In re Thornburg (Court of Appeals of Ohio, Cuyahoga County),* 55 Ohio App. 229 [9 N. E. (2d) 516], concerned the application of a handbill ordinance to the same business as that of respondents here. The court considered the ordinance as applied to such a business as one attempting to regulate property rights. The majority of the court held that a city may not prohibit distribution of handbills, etc., which are merely an incident to the conduct of a lawful business. But the opinion concedes that if the purpose of the ordinance were to regulate traffic, and so stated, it would represent a valid exercise of police power. The court held the ordinance valid insofar as it prohibited distribution of drugs, patent medicines, samples of foodstuffs, etc., on the streets, because such an application related to public health. Judge Terrell, dissenting, observed that it is not necessary in an ordinance to state the purpose for which it is enacted, or the evils sought to be overcome, and if from a reading of the ordinance it can be gathered that the purpose thereof is for the general safety and health of the citizens, it is within the exercise of the police powers of the city. He stated: "No person has an inherent right to conduct his business upon the public streets and sidewalks of a city. The distributing of advertising circulars and cards is part of a business. The city council in the exercise of its police power may prohibit the carrying on of such business on the public streets and highways." The dissent in the Thornburg case follows a line of reasoning more in accord with the views herein expressed.

A significant case upon the subject at hand, and one re-

[1]In *McKay Jewelers et al. v. City of Los Angeles, No. L. A. 17933, Supreme Court of California,* recently argued and submitted November 6, 1941, (pending), there is raised the same question in connection with solicitation of business in front of a jewelry store by the proprietors or employees thereof. The ordinance there involved is section 42.00 of the Los Angeles Municipal Code prohibiting such solicitation. The court below (the same court which passed on the cases at bar) sustained a demurrer, without leave to amend, to a complaint seeking to enjoin enforcement of the ordinance as invalid and unconstitutional. The appellant there contends that the ordinance violates the guaranty of freedom of speech, which it is claimed applies as well to commercial transactions as to expressions of general opinions. It appears that when appellants there made solicitations they were standing on their own property, but in front of their store. [The opinion of the Supreme Court, decided Feb. 26, 1942, is reported under the title of *McKay Jewelers* v. *Bowron* in 19 Cal. (2) 649 [122 P. (2d) 543].]

garded as leading, is that of *San Francisco Shopping News Co.* v. *City of South San Francisco,* cited above (certiorari to United States Supreme Court denied, 293 U. S. 606 [55 Sup. Ct. 122, 79 L. Ed. 697].) The city of South San Francisco enacted an ordinance prohibiting the distribution in the city of any handbills or printed or written advertising matter on any porch or in any yard not in possession or under the control of the person distributing such matter. It was further provided that the ordinance shall be inapplicable to any newspaper or any publication printing news of a general nature and keeping advertising space therein open to the public, and the publishing of general advertising matter therein. In a decision replete with citations of compelling authority, drawn from the United States Supreme Court, the Ninth Circuit Court of Appeals upheld the validity of the ordinance.

In *Murphy* v. *California,* 225 U. S. 623 [32 Sup. Ct. 697, 56 L. Ed. 1229], cited in *San Francisco Shopping News Co.* v. *City of South San Francisco, supra,* it is said: "The 14th Amendment protects the citizen in his right to engage in any lawful business, but it does not prevent legislation intended to regulate useful occupations which, because of their nature or location, may prove injurious or offensive to the public. Neither does it prevent a municipality from prohibiting any business which is inherently vicious and harmful. But, between the useful business which may be regulated and the vicious business which can be prohibited lie many nonuseful occupations which may or may not be harmful to the public, according to local conditions, or the manner in which they are conducted."

In *People* v. *St. John,* 108 Cal. App. (Supp.) 779 [288 Pac. 53] (1930), the Appellate Department of the Superior Court of Los Angeles County considered the validity of an ordinance prohibiting distribution of commercial advertising on streets, other public places and private yards. The case concerned the distribution of an advertising publication like that in the San Francisco Shopping News case. The shopping news in question was left upon the private porches of persons requesting the same. The validity of the ordinance was upheld as applied to distribution of the shopping news, though doubt was expressed as to the validity thereof if applied to instances where such a paper was handed at their homes to persons willing to receive the same; but when, as in the St. John case, the paper was thrown on the porch, where such distribution was likely

to litter the streets, the court was of the opinion that the method employed did not constitute such personal distribution. It should be noted that there is a marked distinction between handing a paper to an individual who wants it, at the door of his home, and handing a paper to a person upon the public street, insofar as the likelihood of littering the streets is concerned.

In *Sieroty* v. *City of Huntington Park,* 111 Cal. App. 377 [295 Pac. 564] (1931), the ordinance was like that in the San Francisco Shopping News case, and prohibited distribution of advertising matter by placing or causing the same to be placed in any automobile, or in any yard, on any porch, or in any mailbox, not in the possession or under the control of the party distributing the same. The ordinance was held to be regulatory and not prohibitive and its validity was sustained. A hearing in the California Supreme Court was denied, Mr. Justice Shenk and Mr. Justice Preston dissenting.

It is significant that in the San Francisco Shopping News case, *People* v. *St. John* and in the Sieroty case a distinction between a commercial advertising sheet and a newspaper printing news of a general nature was recognized as reasonable; and in none of these cases was it considered that anything more than an interest in property was involved.

Respondents attempt to distinguish these three cases last mentioned upon the ground that the ordinances there considered prohibited distribution on private property, whereas the ordinance here in question seeks to prohibit distribution of advertising matter upon the public streets. But in all three cases the ordinances were viewed as intended to prevent littering of the streets. Can it be said that a city may prohibit or regulate the distribution of advertising matter on private property in order to prevent littering public streets, but may not enact a similar ordinance as to distribution on the streets themselves?

It is true that in *People* v. *Taylor,* 33 Cal. App (2d) (Supp.) 760 [85 Pac. (2d) 978], the Appellate Department of the Superior Court of San Diego County has stated that the attempt to prohibit mere handing of advertising matter to persons on streets or other public places has often been held an unlawful and unwarranted invasion of private rights, but, of the cases there cited as authority for such a proposition, all were concerned with ordinances so broad as to include any and all types of literature, at once rendering the ordinances in-

valid; and all of such cases directly involved the exercise of freedom of speech or of the press in connection with political, religious, social, economic or related matters, as did the case of *People* v. *Taylor* itself. It is to be noted that among the cases so cited, *People* v. *Johnson* (*N. Y., Court of General Sessions, N. Y. Co.*), 117 Misc. 133 [191 N. Y. Supp. 750], expressly draws a distinction between distribution of commercial and non-commercial matter in this respect. The court there was of the opinion that the ordinance in question was only intended to apply to commercial advertising matter, and, within such limits, was a proper police regulation. (A distinction between distribution of commercial advertising and freedom of expression of views in general has also recently been drawn by lower New York courts in *People* v. *La Rollo,* (*City Magistrates' Courts of N. Y. City, Municipal Term, Bronx County*) (*1940*), 24 N. Y. Supp. (2d) 350, and *People* v. *Passafume,* (*Court of Special Sessions of New Castle, Westchester County*) (*1940*), 22 N. Y. Supp. (2d) 785). Under the circumstances, the statement in *People* v. *Taylor*, above referred to, must be taken as intended to apply only to attempts at prohibiting all advertising matter without respect to reasonable distinctions or classifications, and is therefore inapplicable to the instant situation.

It is thus demonstrated that the distinction drawn by the ordinance here in question, between commercial and non-commercial matter distributed on the public streets, is reasonable and possesses a sound basis in reality; nor could it be contended that the ordinance does not apply equally to all persons of the same class. ▇ But one question remains. Does the ordinance bear a reasonable relation to the public health and general welfare? In a populous metropolitan area such as Los Angeles it cannot be said that any ordinance. framed like the present one, intended to prevent littering of the streets, does not bear a direct connection with the maintenance of public health and safety. Reasonable minds might differ, but "the judicial function is exhausted with the discovery that the relation between means and end is not wholly vain and fanciful, an illusory pretense." (*Williams* v. *Baltimore,* 289 U. S. 36 at 42 [53 Sup. Ct. 431, 77 L. Ed. 1015, 1022]; and see *San Francisco Shopping News Co.* v. *South San Francisco, supra.*) There is no sound basis for setting aside the ordinance as invalid, nor any grounds for restraining its enforcement as applied to respondents. Upon the facts

alleged the cause of action herein is unfounded, and it follows that appellants' demurrer to respondents' complaint should have been sustained; nor does it appear that any cause of action could possibly be stated in the situation here presented. It should be noted that respondents have not attempted to distinguish their order blanks and envelopes from "any commercial advertising handbill, or any handbill distributed for the purpose of advertising any merchandise," as these terms are used in the ordinance in question; and it is clear, both from the apparent purpose of the ordinance and from respondents' allegations as to the manner of distribution, that such a distinction would not be possible.

The judgment is reversed and the cause remanded with directions to the court below to sustain the demurrer interposed by defendants and thereupon enter judgment in favor of defendants.

York, P. J., and White, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied April 16, 1942.