[L. A. No. 17933.   In Bank.   Feb. 26, 1942.]

McKAY JEWELERS, INC. (a Corporation) et al., Appellants, v. FLETCHER BOWRON et al., Respondents.

Rollin L. McNitt and Edythe Jacobs for Appellants.

Ray L. Chesebro, City Attorney, W. Joseph McFarland and F. von Schrader, Assistants City Attorney, and Robert H. Patton, Deputy City Attorney, for Respondents.

CURTIS, J.—Plaintiffs appeal from a judgment of dismissal after an order sustaining a demurrer to an amended complaint without leave to amend. The action was brought to enjoin the enforcement of an ordinance of the city of Los Angeles, on the ground that, as applied to plaintiffs, it violated certain articles of both the state and federal Constitutions.

Plaintiffs and appellants are owners of duly licensed businesses conducted at ten respective addresses between Third and Ninth Streets on South Broadway in Los Angeles, a district included in the ordinance hereinafter referred to. They are all engaged in the business of selling jewelry, radios, certain types of electrical appliances, and other miscellaneous articles. Each owner carries merchandise of the value of

$20,000 and over, and fixtures and equipment of $5,000 and over. The stores all abut on South Broadway and all have display windows in front. Two of the stores are set back two or more feet from the street line, so that a pedestrian or passer-by pausing to inspect the merchandise in the display windows may stand entirely on the premises of the owners. The other store fronts extend to the street line so that a pedestrian or passer-by must stand on the sidewalk when pausing to inspect the window displays. The stores all have entrances immediately abutting on the street and some of these are of sufficient size to contain display cases to display articles sold in the places of business.

The ordinance in question—Ordinance No. 77,000 and the amendments thereto—is entitled "Soliciting and Begging." This ordinance is a portion of the Municipal Code of the City of Los Angeles, chapter 4, article 2, sections 42.00 to 42.16, inclusive. The particular sections and subdivisions under attack are section 42.00 (d), prohibiting, with certain exceptions, the sale of goods on any street, sidewalk or park in the districts defined; section 42.00 (e), prohibiting the "crying" or "soliciting" of merchandise on any street or sidewalk or in any doorway or entrance to any building opening into any such street or sidewalk in the districts defined; section 42.01, prohibiting, with certain exceptions, the use of any area in front of any building occupied by a sidewalk or used or intended for use for sidewalk purposes and extending eighteen feet back of the curb line for any purpose other than for the free and unobstructed passage of pedestrians thereon; and section 42.02, as amended in 1940, which makes it unlawful "for any person to use the street or sidewalk in front of or adjacent to any place of business where goods, wares or merchandise is sold or services offered for gain, or any entrance, doorway or hallway immediately abutting upon any public way, for the purpose of importuning or soliciting passersby, by word of mouth or gesture, or by any sound making device, to enter such place of business for the purpose of examining or purchasing any goods, wares or merchandise or of hiring or bargaining for any services therein."

In the first cause of action plaintiffs allege that they engage in the practice of approaching pedestrians or passersby, standing on the premises of plaintiffs, who pause to inspect the merchandise on display in the windows, and endeavor to engage them in conversation and to further interest such

pedestrians or passers-by in such merchandise for the purpose of making a sale. Plaintiffs deny that any sound-making devices or gestures are used or physical force, pressure or undue influence is exerted to induce prospective customers to enter their places of business. They affirmatively allege that all solicitation or importuning of prospective customers to enter the stores is done in a quiet, dignified and peaceful manner. It is further alleged that all such conversations are conducted in the set-backs or recesses to the doorways within the respective property lines; that at no time do the plaintiffs or their employees step off of the private premises upon which their businesses are being conducted to engage in such conversations; and that no sales are conducted from any display cases in the entrances, but all sales are made inside the stores. The second cause of action contains the allegation that in addition to the conversations conducted entirely on the private premises, plaintiffs also engage in the practice of addressing pedestrians or passers-by, standing on the street adjacent to plaintiffs' display windows and inspecting the contents thereof, and endeavor to and do engage such pedestrians or passers-by in conversations in order to further interest them in such merchandise for the purpose of effecting sales. It is again alleged that in these latter instances neither the plaintiffs nor their employees step off the respective premises of plaintiffs to address or converse with such pedestrians or passers-by.

Each of the causes of action contains the further allegations that a substantial portion of the sales in the respective businesses of plaintiffs is derived from the conduct of the businesses as alleged in the complaint; that the defendants, as enforcement officers of the city of Los Angeles, have threatened to institute proceedings against plaintiffs and to arrest plaintiffs, their officers, agents and employees, for alleged violations of the sections of the Municipal Code previously referred to; and that the threat of defendants to prosecute and the prosecution of plaintiffs, their officers, agents and employees under the ordinance will result in great and irreparable injury to plaintiffs and their businesses, property and other rights.

Defendants demurred generally on the ground that the ordinance complained of was a valid exercise of the police power of the city and was not arbitrary, unreasonable or discriminatory. Defendants also demurred specially on the

grounds of uncertainty, indefiniteness and ambiguity. As previously stated, the demurrer was sustained without leave to amend.

Respondents first question the propriety of the injunctive relief sought by plaintiffs. It is well settled that where the enforcement of an ordinance may cause irreparable injury, the injured party may attack its constitutionality by an action to enjoin its enforcement. (*Jones* v. *City of Los Angeles,* 211 Cal. 304 [295 Pac. 14] ; *San Diego Tuberculosis Assn.* v. *City of East San Diego,* 186 Cal. 252 [200 Pac. 393, 17 A. L. R. 513] ; *Abbey Land etc. Co.* v. *San Mateo County,* 167 Cal. 434 [139 Pac. 1068, Ann. Cas. 1915C, 804, 52 L. R. A. (N. S.) 408] ; 2 McQuillin on Municipal Corporations, 2nd ed., sec. 851.) The allegations of the complaint, which are necessarily admitted by defendants on demurrer, are sufficient to show the irreparable injury which would be suffered by the plaintiffs and their businesses if the threatened arrests were made or if they discontinued the method of conducting the businesses as alleged because of fear of arrest and prosecution.

Before discussing the constitutional questions generally, it should be noted that although the validity of many of the sections of the "Soliciting and Begging" ordinance are attacked in the plaintiffs' briefs, the discussion must be confined to those sections which prohibit soliciting from entrances, doorways or hallways immediately abutting upon any public way. The discussion must be so confined because the allegations in the complaint specifically allege that all of the activities of plaintiffs and their employees are carried on in the set-backs, doorways, hallways or recesses to the doorways of their respective places of business and within their respective private property lines. Because of these allegations the constitutionality of those sections of the ordinance which prohibit sale or solicitation on streets or sidewalks cannot now be questioned by the plaintiffs. Attention will therefore be directed only to that portion of section 42.00 (e) which prohibits the "crying" or "soliciting" of the sale of goods in any doorway or entrance to any building opening into the street or sidewalk and that portion of section 42.02 which makes it unlawful for any person to use any entrance, doorway or hallway immediately abutting upon any public way, for the purpose of importuning or soliciting passers-by, by word of mouth or gesture, to enter such place of business for

the purpose of examining or purchasing any goods, wares or merchandise. The latter section also prohibits the use of sound-making devices, but it is alleged that no such devices were used; therefore, the question of the power of the city to prohibit such use is not now before this court.

The question to be determined is whether it is within the police power of the respondent city to prohibit the solicitation of the sale of goods by appellants on their own property in the manner alleged in the complaint. ■ It is, of course, undisputed that a municipality, under article XI, section 11, of the state Constitution, may, within its limits, exercise police powers equal in extent to those of the state. The term "police power" as defined in the case of *Gin S. Chow* v. *City of Santa Barbara*, 217 Cal. 673, 702 [22 Pac. (2d) 5] is an attribute of sovereignty and is founded on the duty of the state to protect its citizens and provide for the safety, good order and well-being of society. In that case it was noted that although in its inception the police power was closely concerned with the preservation of the public peace, safety, morals and health, under modern conditions it includes the general welfare which embraces regulation " 'to promote the economic welfare, public convenience, and general prosperity of the community.' (*Chicago, B. & Q. R. Co.* v. *Illinois*, 200 U. S. 561, 592 [26 S. Ct. 341, 50 L. Ed. 596, 4 Ann. Cas. 1175].) " In the case of *Wholesale T. Dealers* v. *National etc. Co.*, 11 Cal. (2d) 634 [82 Pac. (2d) 3, 118 A. L. R. 486], this court observed that although the police power has not expanded, changed social, political and economic conditions have enlarged the field of conduct which may properly be subjected to regulation in order that the general welfare may be adequately protected. It should be kept in mind, however, that even though the field of conduct which may be regulated has been enlarged, the requirement that the prohibition or regulation be reasonably related to the public health, safety, morals or general welfare remains the same. ■ A business may be inherently lawful and still subject to police regulation, but when such lawful business is regulated, it is a judicial question whether the law or ordinance is a lawful exercise of the police power. (*People* v. *Hawley*, 207 Cal. 395 [279 Pac. 136]; *Ex parte Whitwell*, 98 Cal. 73 [32 Pac. 870, 35 Am. St. Rep. 141, 19 L. R. A. 727].) If, in the opinion of the court, a statute or ordinance purporting to be enacted to protect the public health, safety, morals, comfort, convenience or general

welfare has no real or substantial relation to any of those objects, it is the duty of the court to so declare. ▮▮▮ A legislative body may not, under the guise of the police power, impose restrictions that are unnecessary and unreasonable upon the use of private property or the pursuit of useful activities. (*Skalko* v. *City of Sunnyvale*, 14 Cal. (2d) 213 [93 Pac. (2d) 93]; *Ganley* v. *Claeys*, 2 Cal. (2d) 266 [40 Pac. (2d) 817]; *Ex parte Hayden*, 147 Cal. 649 [82 Pac. 315, 109 Am. St. Rep. 183, 1 L. R. A. (N. S.) 184].) Innumerable authorities might be cited wherein different standards or tests have been applied in determining whether there has been a valid exercise of the police power.

▮▮▮ Referring to the instant case, we find that by sections 42.00 (e) and 42.02 appellants are absolutely prohibited from using the entrances, hallways or doorways of their places of business to solicit or importune passers-by to enter for the purpose of examining or purchasing merchandise. It is shown by the allegations in the complaint that the owners of the businesses are not wandering peddlers who set up their wares in doorways or entrances for "one night stands." They have established businesses with investments of over $25,000. No sales are made until the prospective customers are inside the stores. It is alleged that appellants obtain a substantial portion of their respective businesses and make a substantial sale of their merchandise as a result of such solicitation. If appellants were prohibited from so conducting their businesses, it must be assumed that the burden would be a heavy one. Such prohibition obviously has no relation to health or morals. It is possible that there might be some relation to safety of the public generally if there were evidence to show that as a result of appellants' activities, crowds of such proportion gathered as to impede or obstruct traffic on the sidewalk. But respondents do not urge that the prohibition is justified on the basis of traffic regulation. Furthermore, that is an evidentiary matter, the determination of which was precluded by the sustaining of the demurrer.

If the prohibition may be justified at all, then it must be under the general welfare clause. However, we find the prohibition has no reasonable relation to the general public welfare. It is alleged that the solicitation is done in a quiet, dignified and peaceful manner, and it is further alleged that no pressure or undue influence is exerted. The passer-by may stop

and listen to what is being said or he may freely and without any interference continue on his way. Such solicitation, confined as it is to private property, differs little from window displays which passers-by may pause and inspect or disregard entirely if they so desire. It is conceivable that some hypersensitive individuals may find this type of solicitation offensive. However, that is not sufficient to justify the prohibition of an otherwise lawful method of conducting a business. As stated in *Ex parte Whitwell, supra,* at p. 83: ''There are many unpleasant and even annoying things which must be borne by persons living in a state of organized society, in order that others may also enjoy their equal rights under the law.'' The fact that a major part of appellants' business is gained from such solicitation is proof that the majority of the public does not look with disfavor upon such methods. The moment the conduct of appellants becomes offensive to the public generally it will cease, for it would be a poor business policy to carry on a practice which resulted in a loss of business rather than a gain. Those who now find the practice distasteful must tolerate it as many other characteristics of a business district must be tolerated. The burden placed upon appellants by such prohibition far outweighs the benefit, if any, to the public generally. Therefore, we are of the opinion that the restriction as applied to appellants under the facts disclosed in the complaint is an unwarranted and unreasonable interference with a lawful business and is violative of article I, sections 1 and 13, of the state Constitution and of the Fourteenth Amendment of the federal Constitution. (See *State of California* v. *Marin Mun. W. Dist., supra; Skalko* v. *City of Sunnyvale, supra; Skaggs* v. *City of Oakland,* 6 Cal. (2d) 222 [57 Pac. (2d) 478] ; *Ganley* v. *Claeys, supra*].)

In support of the contention that the ordinance is valid under the police power respondents cite two New York cases decided by courts of inferior jurisdiction—*People* v. *Phillips,* 147 Misc. 11 [263 N. Y. Supp. 158] and *People* v. *Patrick,* 171 Misc. 705 [14 N. Y. Supp. (2d) 249]. In these cases ordinances similar to section 42.02 of the Los Angeles Municipal Code were upheld. In the Phillips case it is not disclosed whether the defendant confined his activities to his own premises, and in a brief opinion the court concludes: ''In our opinion the regulation as provided in this subdivision appears to be a reasonable provision, and tends to provide against such con-

duct and acts which may lead to disorder and disturbance.''
In the Patrick case the defendant set up a counter in a ves-
tibule. The counter was situated on the building line of the
premises and gloves were sold over the counter to people
standing on the sidewalk. The facts of this latter case differ
materially from the facts of the instant case as disclosed by
the allegations of the complaint. It is doubtful whether the
New York court would have reached the same conclusion
under a similar set of facts. If the Phillips case may be in-
terpreted to mean that a municipality under its police power
may prohibit the type of solicitation engaged in by appellants
here, then for the reasons already discussed this court does
not feel constrained to follow that decision.

Respondents also cite and rely on the cases of *Williams* v.
*Arkansas,* 217 U. S. 79 [30 S. Ct. 493, 54 L. Ed. 673, 18
Ann. Cas. 865] and *In re Barmore,* 174 Cal. 286 [163 Pac.
50]. The Williams case upheld legislation prohibiting drum-
mers from soliciting business on trains. The Barmore case
upheld an ordinance prohibiting the solicitation of business
for the transportation of persons or baggage in depots. This
brief reference to those cases is sufficient to distinguish them
from the situation now under consideration. Travelers would
have no alternative but to face and endure the persistent
solicitation on trains or in depots, and legislation prohibiting
such activity is undoubtedly of great benefit to the peace and
convenience of the traveling public. On the other hand, in
the instant case, if a person does not desire to listen to the
importunities of appellants, he need only pass on, as appel-
lants confine their activities to their own private properties.

This court is well aware of the rule recently reiter-
ated in the case of *Hart* v. *City of Beverly Hills,* 11 Cal. (2d)
343 [79 Pac. (2d) 1080] to the effect that in considering the
constitutionality of a statute no presumption of invalidity
will obtain and every intendment will be indulged in favor of
its validity. However, the presumption of validity is not con-
clusively binding on the courts. As previously stated, a legis-
lative body may not impose restrictions that are unnecessary
and unreasonable upon the use of private property, and it is
for the court to determine the reasonableness of restrictions
imposed. It should be noted that in the Hart case, *supra,* the
court observed that the statute there in question tended to
provide the general public with greater safety ''not only

from a standpoint of protection of its members from physical injury, but also from the possibility of their being the individual victims of fraud or crime." In the instant case respondents have made no showing of nor do they claim a like justification for the enactment of the ordinance in question.

An additional argument made by appellants is worthy of note. Referring to the cases of *Carlson* v. *People of State of California,* 310 U. S. 106 [60 S. Ct. 746, 84 L. Ed. 1104] *Thornhill* v. *State of Alabama,* 310 U. S. 88 [60 S. Ct. 736, 84 L. Ed. 1093] and other cases which have declared ordinances prohibiting peaceful picketing invalid as in violation of the constitutional guarantee of freedom of speech, appellants contend that if a person may stand outside a place of business and orally urge one not to enter, no loud noise or disorderly conduct being involved, certainly an owner of a business may say something in an orderly way, importuning a person to enter his premises to engage in business. In this regard appellants present the following query: "If it is the constitutional right of an employee to stand on the street in front of his employer's place of business and solicit or importune the public not to enter and trade with his employer, is it not also his constitutional right, as well as that of his employer, when conditions of employment are satisfactory to the employee, to stand on the premises of his employer's business and importune or solicit patrons to enter and trade, thus promoting trade and commerce in aid of his employment and in aid of the general welfare?" These contentions are primarily directed against those sections prohibiting activities on streets or sidewalks, and, as previously pointed out, the constitutionality of such sections is not directly involved in the present case because of the allegations in the complaint. However, the argument becomes even stronger if it is confined to those parts of the sections prohibiting solicitation from doorways and entrances. If a person because of his constitutional guarantee of freedom of speech, can stand on the sidewalk in front of a place of business and peacefully solicit the general public to refrain from entering because of a labor dispute, then surely a person can stand in his own doorway and solicit the general public to enter his place of business to purchase merchandise. Respondents attempt to dismiss this contention with the statement that "regulations and prohibitions bearing upon solicitation of

trade are not to be measured by rules relating to freedom of speech." Such contention cannot be so easily dismissed. The right to conduct a private business free from unreasonable regulation is just as sacred as the right of the members of a labor organization to conduct a campaign for better labor conditions and should receive equal protection under the constitutional guarantees. To permit peaceful solicitation by a picket on the sidewalk and prohibit peaceful solicitation from a doorway abutting on the sidewalk would be gross discrimination. It may be said, therefore, that the prohibition in the instant case is in violation of the constitutional guarantee of freedom of speech.

For the foregoing reasons the judgment is reversed with directions to the trial court to overrule the demurrer and permit the defendants to answer if they are so advised.

Gibson, C. J., Shenk, J, Edmonds, J., Houser, J., Carter, J., and Traynor, J., concurred.