[Crim. No. 2415.   First Dist., Div. Two.   Aug. 19, 1946.]

In re REO MARES, on Habeas Corpus.

Henry C. Clausen for Petitioner.

Edmund G. Brown, District Attorney, and Elton C. Lawless, Deputy District Attorney, for Respondent.

GOODELL, J.—The petitioner seeks to be released from custody after his arrest for a violation of ordinance 2593 of the city and county of San Francisco which provides that, "No person shall on any public street or sidewalk . . . or in any area or doorway or entrance-way immediately abutting thereon, solicit the sale to street and sidewalk traffic of any subscription to any magazine or periodical for future delivery, or the sale of any tangible personal property to be delivered to the purchaser thereof, or to any other person, at a subsequent time." A violation is made a misdemeanor punishable by a fine of $500, or imprisonment not to exceed six months or both.

Petitioner worked as a solicitor on a commission basis for a partnership which acted as broker for various national magazine distributors and publishers including Liberty, Cosmopolitan, Good Housekeeping, Argonaut, Catholic Digest, Reader's Digest, Popular Mechanics, Newsweek, Saturday Evening Post, New York Times and Christian Herald. On April 13, 1946, when arrested, he admittedly was engaged on the streets and sidewalks and in the areas, doorways and entrance-ways abutting thereon, in soliciting subscriptions for

some or all of those publications. It is alleged that the solicitation was conducted in a quiet manner and subscribers were accepted only if they gave a definite address.

Most of the magazines are published outside California and sent by mail to subscribers in this and other states after the booking of the subscriptions. Some of them are published in California and sent by mail to subscribers either within or without the state.

Five grounds are urged against the validity of this ordinance, namely, that it (1) is an arbitrary prohibition of a lawful business; (2) interferes with interstate commerce; (3) violates the rights of freedom of speech and of the press; (4) denies petitioner the equal protection of the laws; and (5) cannot be sustained as an emergency measure.

**1st: Prohibition or regulation.** Petitioner concedes that such solicitation is subject to regulation, and he indeed invites it, but he complains that where there can be regulation, absolute prohibition is an arbitrary, oppressive and unreasonable exercise of power. The ordinance does not prohibit solicitation generally, which, of course, is a lawful business. It prohibits solicitation of *street and sidewalk traffic* in a populous and busy city.

It is true, as was said in *In re Farb,* 178 Cal. 592, 598 [174 P. 320, 3 A.L.R. 301], relied on by petitioner, that ''The law does not tolerate the prohibition of something which may be regulated in such way as to overcome any evils which may be incidentally connected with it.'' (See, also, 5 Cal. Jur. 710.) But the question whether regulation could effectively solve the problem or whether outright prohibition was necessary, was a question which the supervisors had to decide. Assuming that regulation had been ordained, requiring the examination, bonding and licensing of solicitors, the basic traffic problem still would not have been solved or even touched. Pedestrians would still be accosted and intercepted, and sidewalk traffic halted, on the busy sidewalks of the city, or in somebody's near-by doorway, while sales talks were delivered and order blanks signed. The only difference would be that the solicitors would be licensed. If certain areas were defined as out of bounds for solicitation, or the hours therefor limited, that would not be true regulation but really partial prohibition. Doubtless the supervisors had these considerations in mind when they enacted this ordinance and decided that outright prohibition was the only

effective remedy. In view of the cases presently to be cited it would seem to be a question within their own province as legislators, for, according to the authorities, such a subject was open to either regulation or outright prohibition. (See *People* v. *Sullivan*, 60 Cal.App.2d 539, 541 [141 P.2d 230].)

"The place for the conduct of a private business is upon private property; and it has been said that *there is no vested right to do business upon the public streets.*" (*Pittsford* v. *City of Los Angeles*, 50 Cal.App.2d 25, 32 [122 P.2d 535], and see text therein quoted and cases cited.) "It is well established law that the highways of the state are public property; . . . and that their use for purposes of gain is *special and extraordinary*, which, generally at least, the legislature may *prohibit* or condition as it see fit [citations]." (*Stephenson* v. *Binford*, 287 U.S. 251, 264 [53 S.Ct. 181, 77 L.Ed. 288, 294, 87 A.L.R. 721].) "Use of a public street for private enterprise may under some circumstances redound to the public good; but nevertheless it is a *special privilege* peculiarly subject to regulation, and one which may be granted on reasonable terms *or entirely withheld* [citations]." (*People* v. *Galena*, 24 Cal.App.2d Supp. 770, 775 [70 P.2d 724].) (Emphasis thus far is ours.) Numerous authorities support these statements.

Moreover, no rigid or arbitrary distinction between regulation and prohibition is drawn by the courts *in passing on ordinances of this character*. The standard, rather, is defined as follows in *Booth* v. *Illinois*, 184 U.S. 425, 429 [22 S.Ct. 425, 46 L.Ed. 623] : "If, looking at all the circumstances that attend, or which may ordinarily attend, the pursuit of a particular calling, the State thinks that certain admitted evils cannot be successfully reached unless that calling be actually prohibited, the courts cannot interfere, unless, looking through mere forms and at the substance of the matter, they can say that the statute enacted professedly to protect the public morals has no real or substantial relation to that object, but is a clear, unmistakable infringement of rights secured by the fundamental law." (See, also, *Otis* v. *Parker*, 187 U.S. 606, 609 [23 S.Ct. 168, 47 L.Ed. 323].)

None of the many cases cited by the petitioner under this head concerns the factual situation now presented, namely, the use of the *public* streets for *private* business; they deal with the prohibition or regulation of private business on one's

own premises. The closest case on its facts, cited by petitioner, is *McKay Jewelers, Inc.* v. *Bowron*, 19 Cal.2d 595 [122 P.2d 543, 139 A.L.R. 1188], upon which he strongly relies. The two cases, however, are easily distinguished for there the plaintiff shopkeepers did all their soliciting *while wholly within their own premises*, which abutted on the street, and the sales were made inside their stores. In the instant case Mares moved about on the sidewalks, and the doorways and entrance-ways which he admittedly used were not on his or his principals' premises. In the McKay case the court held (p. 601) that ''A legislative body may not, under the guise of the police power, impose restrictions that are unnecessary and unreasonable *upon the use of private property* or the pursuit of useful activities'' (emphasis added) and that therefore the prohibition of the Los Angeles law had no relation to health, morals or the general public welfare and that, *as applied to plaintiffs*, it violated their constitutional rights. It is not in point.

The instant case, in our opinion, presents a situation as clearly within the exercise of the police power as that presented in the Galena case, *supra*. The difference between the control of taxicab stands and the control of sidewalk traffic is simply a difference in degree. In our opinion when the supervisors ordained absolute prohibition rather than mere regulation they dealt with a matter directly related to the public peace, safety, convenience, comfort and welfare.

■ *2d: Commerce clause, and, 3d, freedom of speech and press.* A local law containing substantially the same prohibitions as those found in ordinance 2593 is in effect in the city of Los Angeles. In the case of *People* v. *Carver et al.*, (not published) defendants were convicted in the Municipal Court of Los Angeles of its violation. On appeal before the appellate department of the superior court its constitutionality was challenged on grounds 2d and 3d now raised. The judgment was affirmed on December 14, 1945 (Cr. A-2119), in the following opinion written by Presiding Judge Shaw, concurred in by Judges Bishop and Kincaid, which we take the liberty of adopting:

''The defendants appeal from judgments of conviction of violating Section 42.19 of the Los Angeles Municipal Code. That section provides that 'No person shall, on any public street or sidewalk in this city, or in any doorway or entrance-way immediately abutting thereon, solicit the sale of any

subscription to any magazine, periodical or other publication, or the sale of any tangible personal property for delivery at a subsequent time.' The charges against defendants were under that part of the section prohibiting solicitation of magazine subscriptions on the public streets and sidewalks. These cases were tried together and at the trial it was stipulated that witnesses would testify to the doing by defendants of the acts charged and that the magazines for which subscriptions were solicited were published and printed outside of the State of California, the subscription money was sent to the publishers, and the magazines were sent by mail from the place of publication outside of California to the subscribers in and out of California.

"The points made on appeal go entirely to the validity of the ordinance, the objections being, first, that it is an unlawful interference with interstate commerce, and, second, that it infringes freedom of speech and the press. Possibly the provision of the ordinance which prohibits solicitation from doorways and entranceways abutting on the streets may be invalid for the reasons held to invalidate a similar ordinance in *McKay Jewelers* v. *Bowron* (1942), 19 Cal.2d 595 [122 P.2d 543, 139 A.L.R. 1188]; but that provision is not in question here, and the two provisions regarding place of solicitation are plainly separable, so that if one is struck down it does not necessarily drag the other down with it. (*Bacon Service Corp.* v. *Huss* (1926), 199 Cal. 21, 32 [248 P. 235]; *People* v. *Lewis* (1939), 13 Cal.2d 280, 282 [89 P.2d 388]; *In re Bell* (1942), 19 Cal.2d 488, 498 [122 P.2d 22].)

"The prohibition against street solicitation is not an absolute prohibition but merely a regulation of the obtaining of magazine subscriptions. It affects interstate commerce in magazines indirectly only. It does not discriminate between intrastate and interstate commerce, but applies to both alike. It relates to a matter of local concern, with which it would be difficult for Congress to deal adequately. It appears to us to be well within the rule sanctioning local regulations which was laid down in *California* v. *Thompson* (1941), 313 U.S. 109 [61 S.Ct. 930], 85 L.Ed. 1219, 1221, where the court said: '. . . there are matters of local concern, the regulation of which unavoidably involves some regulation of interstate commerce, but which because of their local character and their number and diversity may never be adequately dealt with by Congress. Because of their local character, also,

there is wide scope for local regulation without impairing the uniformity of control of the national commerce in matters of national concern and without materially obstructing the free flow of commerce which were the principal objects sought to be secured by the Commerce Clause. Notwithstanding the Commerce Clause, such regulation in the absence of Congressional action has, for the most part, been left to the states by the decisions of this Court, subject only to other applicable constitutional restraints.' See also *Town of Green River* v. *Fuller Brush Co.* (C.C.A. 10, 1933), 65 F.2d 112 [88 A.L.R. 177], where similar reasons were given for upholding, as far as the matter of interstate commerce was concerned, an ordinance prohibiting solicitation of sales in certain places.

■ "The contention regarding freedom of speech and press is sufficiently answered by the decisions in *Pittsford* v. *City of L. A.* (1942), 50 Cal.App.2d 25, 32 [122 P.2d 535], and *Valentine* v. *Chrestensen* (1942), 316 U.S. 52 [62 S.Ct. 920], 86 L.Ed. 1262, where the courts upheld ordinances prohibiting distribution of business advertising matter on the streets. In the latter case, the court said: 'This court has unequivocally held that the streets are proper places for the exercise of the freedom of communicating information and disseminating opinion and that, though the states and municipalities may appropriately regulate the privilege in the public interest, they may not unduly burden or proscribe its employment in these public thoroughfares. We are equally clear that the Constitution imposes no such restraint on government as respects purely commercial advertising. Whether, and to what extent, one may promote or pursue a gainful occupation in the streets, to what extent such activity shall be adjudged a derogation of the public right of user, are matters for legislative judgment. The question is not whether the legislative body may interfere with the harmless pursuit of a lawful business, but whether it must permit such pursuit by what it deems an undesirable invasion of, or interference with, the full and free use of the highways by the people in fulfillment of the public use to which streets are dedicated.'

"This ordinance does not, like those condemned in *Schneider* v. *Irvington* (1939), 308 U.S. 147 [60 S.Ct. 146], 84 L.Ed. 155, prohibit the distribution of literature on the streets. It merely prohibits the sale of subscriptions for publications to be delivered at a future time. The decision in that case was based upon the propositions that 'the streets are natural

and proper places for the dissemination of information and opinion' and that the ordinances there considered abridged what the courts designated as 'the constitutional liberty of one rightfully upon the street to impart information through speech or the distribution of literature.' The ordinance here in question has no such effect. In *Schneider* v. *Irvington, supra,* the court further said: 'We are not to be taken as holding that commercial soliciting and canvassing may not be subject to such regulation as the ordinance requires,' referring to an ordinance which required a permit for canvassing from house to house. As far as appears here, the activities of the defendants were of a purely commercial nature.

"The judgments are affirmed."

The recent case of *Nippert* v. *City of Richmond,* 327 U.S. 416 [66 S.Ct. 586, 90 L.Ed. ——, 162 A.L.R. 844] relied upon by petitioner was decided since the Carver case. The Richmond ordinance imposed an annual license tax on solicitors of $50 and ½ of 1 per cent of the gross earnings, receipts, fees or commissions for the preceding license year in excess of $1,000. The court held (p. —— [90 L.Ed.]) the ordinance to be "discriminatory in favor of the local merchant as against the out-of-state one." At page —— [90 L.Ed.] the court said, "As has been so often stated but nevertheless seems to require constant repetition, not all burdens upon commerce, but only undue or discriminatory ones, are forbidden." The burden was there held to be undue and discriminatory. *Real Silk Hosiery Mills* v. *Portland,* 268 U. S. 325 [45 S.Ct. 525, 69 L.Ed. 982], is also relied on by petitioner. That case is discussed in the Nippert opinion at page —— [90 L.Ed.] where the court points out that there "a municipal ordinance requiring solicitors to pay a license fee was held unconstitutional as a forbidden burden upon interstate commerce when applied to an out-of-state corporation whose representatives solicited orders for subsequent interstate shipment." Neither case is in point.

■ *4th: Equal protection of the laws.* The petitioner claims that the ordinance is discriminatory in that it prohibits solicitation for future deliveries while permitting it for immediate deliveries. The difference between the handling of an immediate sale, where the pedestrian knows what he wants beforehand, and the routine necessarily involved in halting a pedestrian, arresting his attention, "selling" him the idea

of becoming a subscriber, and then filling out an order blank and getting his signature on the dotted line, is so palpable as to require no elaboration. The two operations are as distinct as those involved in door-to-door solicitation (which is not prohibited) and sidewalk solicitation. The ordinance plays no favorites among or within the class of persons similarly situated, but operates uniformly upon them (*People* v. *Sullivan*, 60 Cal.App.2d 539, 541, *supra;* 18 Cal.Jur. 827; 12 Am.Jur. 144); it draws no line between magazines published within the city or state and those published elsewhere (*Cf. In re Robinson*, 68 Cal.App. 744 [230 P. 175]); it simply prohibits the solicitation of sidewalk traffic for future delivery, by anybody and everybody alike and at all times. It therefore is not at all within the cases cited by petitioner, for here there is a valid and reasonable ground of distinction with nothing arbitrary about it (see 5 Cal.Jur. § 213, p. 860; *People* v. *St. John*, 108 Cal.App.Supp. 779, 789, 790 [288 P. 53]; *Sieroty* v. *Huntington Park*, 111 Cal.App. 377, 380 [295 P. 564]).

The petitioner also claims that there is discrimination in the enforcement of the ordinance in that members of Jehovah's Witnesses are permitted to solicit subscriptions for their publications. Several recent cases illustrate the distinction between activities of a purely commercial nature *which are subject to prohibition or regulation,* and those which are directed to the spreading of a religious belief, or the dissemination of some social, economic or political thought or some other doctrine or idea believed to be of public interest or general concern, *which cannot be stopped* (*Valentine* v. *Chrestensen, supra; Schneider* v. *Irvington, supra; Lovell* v. *Griffin,* 303 U.S. 444 [58 S.Ct. 666, 82 L.Ed. 949]; *Jamison* v. *Texas,* 318 U.S. 413 [63 S.Ct. 669, 87 L.Ed. 869]; *Jones* v. *Opelika,* 319 U.S. 103 [63 S.Ct. 890, 87 L.Ed. 1290]; *Murdock* v. *Pennsylvania,* 319 U.S. 105, 111 [63 S.Ct. 870, 87 L.Ed. 1292, 1297, 146 A.L.R. 81]; *Martin* v. *Struthers,* 319 U.S. 141 [63 S.Ct. 862, 87 L.Ed. 1313]; *Marsh* v. *Alabama,* (Jan. 7, 1946) 326 U.S. 501 [66 S.Ct. 276, 90 L.Ed. ——]; *Pittsford* v. *Los Angeles, supra;* see, also, "*Freedom of Speech and Commercial Solicitation*" 30 Cal.L.Rev. 655). Our Supreme Court has recognized this distinction in the recent case of *Gospel Army* v. *City of Los Angeles,* 27 Cal.2d 232, 242 [163 P.2d 704]. Hence there was no discrimination on this score.

*5th: The claim that the ordinance cannot be sustained as an emergency measure.* The ordinance, enacted in 1939 as an emergency measure, recites as reasons for its adoption that "due to the existing war emergency there are daily on the streets . . . a large number of the armed forces" who "by reason of their service . . . can give no definite place of address, and it is impossible to deliver to said members of the armed forces, and other persons engaged in necessary war work, the articles subscribed to and sold for future delivery, and said persons are often times deprived of any payment made on account of said subscriptions for said periodicals or on account of the down payment made on the sale of any article of personal property. . . ." And "further when said members of the armed forces are asked as to where said publications subscribed for, or articles of personal property sold, should be delivered, said members of the armed forces inadvertently divulge military information which should not be available to the public at large."

Granting that there was an emergency when the ordinance was enacted, the fact that it is less acute now, or has entirely passed, would not invalidate the ordinance. If the supervisors had the power to enact the ordinance—emergency or no emergency—then it is still a good piece of legislation. Even if there had been no emergency when they declared that one existed, the ordinance would not be void, but its effective date would be merely postponed for 30 days (18 Cal.Jur. 922).

If this ordinance interfered with interstate commerce the recitals therein that subscribers might be deprived of their payments would not save it (*Real Silk Hosiery Mills* v. *Portland, supra,* citing *Shafer* v. *Farmers Grain Co.,* 268 U.S. 189 [45 S.Ct. 481, 69 L.Ed. 909]) but we have already seen that there is no such interference. The fact that the city or state might, under other laws, be able to prevent and punish frauds would not make void this ordinance, enacted under the police power to regulate traffic on the streets.

It must be conceded, of course, that "The Constitution of the United States is a law for rulers and people, equally in war and in peace, and covers with the shield of its protection all classes of men, at all times, and under all circumstances" (*Ex parte Milligan,* 4 Wall. (71 U.S.) 2, 120-121 [18 L.Ed. 281]). (See, also, *United States* v. *Schechter Poultry Corp.,* 295 U.S. 495, 528 [55 S.Ct. 837, 79 L.Ed. 1570, 1579, 97 A.L.R. 947] and *Home Building & Loan Assn.* v. *Blaisdell,*

290 U.S. 398, 425 [54 S.Ct. 231, 78 L.Ed. 413, 422, 88 A.L.R. 1481].)

If the supervisors had the power before the emergency arose to enact such an ordinance, then such power was not removed or diminished by the emergency. That they had the power is beyond question (see earlier discussion, and particularly *People* v. *Galena, supra*) for the ordinance deals directly with a traffic problem,—one involving the public peace, safety, convenience, comfort and welfare.

A case dealing directly with the power of the legislative branch with respect to emergency measures is *Davis* v. *County of Los Angeles,* 12 Cal.2d 412, 420 [84 P.2d 1034]; see, also, *Stevenson* v. *Colgan,* 91 Cal. 649, 652 [27 P. 1089, 25 Am.St. Rep. 230, 14 L.R.A. 459]; *Lukens* v. *Nye,* 156 Cal. 498, 505 [105 P. 593, 20 Ann.Cas. 158, 36 L.R.A.N.S. 244]; *Plum* v. *State Board of Control,* 51 Cal.App.2d 382, 385 [124 P.2d 891].

It may well be that the petitioner, or others similarly situated, may be able to persuade the supervisors that, because hostilities have ceased, or for other reasons, the ordinance should be repealed. Such repeal cannot, however, be effected by the courts for the subject is purely a legislative one.

The conclusion at which we have arrived finds support on several of the points raised and discussed herein, in the case of *In re Hartman,* 25 Cal.App.2d 55 [76 P.2d 709] and in *Town of Green River* v. *Fuller Brush Co.,* 65 F.2d 112 [88 A.L.R. 177], cited in the Carver case, *supra.*

The petition is denied and the petitioner remanded to custody.

Nourse, P. J., and Dooling, J., concurred.