THE PEOPLE v. EDWARD L. MOLYNEUX.

40   113
144   417

The governor of the State has no power, during the recess of the senate, to appoint a major-general of the National Guard, to fill a vacancy occasioned by resignation, or otherwise, except in time of war.

Neither section 42, title 6, chapter 1 of the Revised Statutes (1 R. S., p. 123), nor chapter 28 of the Laws of 1849, are applicable to military officers.

(This cause was argued on the 8th of January, 1869, and decided on the 19th of March, 1869.)

THIS was an action in the nature of a *quo warranto*, charging the defendant with having usurped and unlawfully intruded himself into the office of major-general of the second division of the National Guard, and praying his ouster therefrom.

By the nomination of the governor, and with the consent of the senate, Harmanus B. Duryea had been appointed major-general of the second division of the National Guard of the State of New York, prior to July 14th, 1868. On that day, he resigned the said office, whereby a vacancy was created in the same. The senate of the State of New York was then in recess, and so continued, until after the trial of this action, in October, 1868. On the 31st day of August, 1868, Governor Fenton appointed the defendant to fill the said vacancy, the recess of the senate still continuing. On the trial of the action, the judge held, that the appointment thus made, without the concurrence of the senate, was void; and ordered judgment for the plaintiff. Upon an appeal to the General Term of the second district, such judgment was affirmed, and the defendant now appeals to this court.

*Lyman Tremain*, of counsel for the appellant, cited, upon the point, that the scope of a statute is not limited, or restrained, by its title or preamble, where the enacting clause is clear and unambiguous, *United States* v. *Fisher* (2 Cranch,

386); *The same* v. *Palmer* (3 Wheat., 610); *People* v. *McCann* (16 N. Y., 58); (6 Bacon's Abr., 380); *Jackson* v. *Gilchrist* (15 J. R., 89–116); *Constantine* v. *Van Winkle* (6 Hill, 177); *Clark* v. *Bynam* (3 McCord, 298); *Harrison* v. *Walker* (1 Kelly, 32); *Rex* v. *Marks* (3 East., 165); *Holbrook* v. *Holbrook* (1 Pick., 251); *Lees* v. *Sammergill* (17 Vesey, 510); *United States* v. *Webster* (Davies, 38); *United States* v. *Warner* (4 McLean, 463). Upon the point, that § 42, title 6, chapter 1, of the Revised Statutes, was in force, under the Constitution of 1846, they cited *People* v. *Snedeker* (14 N. Y., 54). Upon the point, that the governor, by virtue of his position as commander-in-chief, has the power of filling vacancies in military offices, independent of the statute, they cited 1 Blackstone Comm., 262; *People* v. *Scrugham* (28 Barb., 216).

*Philip S. Crooke*, counsel for the respondents.

HUNT, Ch. J. By the Constitution of the State of New York, adopted in 1821, it was provided as follows: "The Governor shall nominate, and, with the consent of the senate, appoint all major-generals." (Art. 4, § 2.) By the Constitution of the State of New York, adopted in 1846, it was also provided, that "The governor shall nominate, and with the consent of the senate, appoint all major-generals." (Art. 11, § 3.) By the second section of the same article, provision is made for the choice of all militia officers, by the votes of the members of the companies or regiments and brigades, from captain of a company to a brigadier-general. Provision is thus made for the selection of all the officers connected with the militia system of the State.

The governor obtains his power of nomination and appointment, under the Constitution, and it is regulated by its provisions. The same instrument makes him the head of the civil authority of the State, and the commander-in-chief of its military and naval forces. He derives his power, in

both capacities, from the written Constitution of the State, and, in both capacities, is subject to its restrictions and limitations, express or implied. Thus, when the Constitution provides that captains of companies shall be chosen by the votes of the members of the company, and that field officers of the regiments shall be chosen by the written votes of the commissioned officers of their respective regiments, it is quite unnecessary, that there should be an ordinance, that these officers shall not be appointed by the governor. The implied prohibition is equal to the express one. So, when the Constitution declares that the governor shall nominate, and, with the consent of the senate, appoint all major-generals, it is equivalent to saying, that he can make no such appointment, unless the same is accompanied by the consent of the senate. And this limitation exists, equally, whether he profess to act, as governor of the State, or as commander-in-chief of its military and naval forces. This restriction upon executive powers, as well as the adoption of a system of electing militia officers, is in accordance with the democratic tendencies of the country, and operates with safety, in times of peace. The machinery of election is, however, too slow and cumbrous for a state of actual warfare, when energy, vigor and promptness are in especial requisition. Hence, it is provided that, in time of war, the elective system shall be suspended, and the selection of all that class of commissioned officers, shall be made by executive appointment alone. (Stat., 1862, p. 895, § 59.) The same statute, however, in terms, declares, that all major-generals shall be appointed by the concurrent action of the governor and the senate.

Upon what ground is it claimed, that there is authority for this appointment? Reference is made by the appellant's counsel, to chapter 28 of the Laws of 1849, rather, as I understand, by way of illustrating the argument, in favor of the general policy of authorizing the governor to fill vacancies, than as meeting the present case. That statute provides that, when vacancies shall occur in an office, where no provision is made, by law, for filling the same, the governor shall

appoint some suitable person, to execute the duties thereof, until the end of the then political year. It is not necessary to decide, whether this would have fallen within the description of the class spoken of in this statute, for the governor has not assumed to act under it. He has not appointed a person to discharge the duties of the office of major-general, but he has attempted to appoint a new major-general. Indeed, an attempt to appoint a person to do the duties of a military officer, would have been unnecessary, and quite unmilitary. By general military law, there is no such thing as a vacancy in duty, among line officers. Upon the death, or absence, of the higher officer, the command and the entire duty at once devolve upon the officer next in rank, who is present. There may be a vacancy in rank, but none in duty or command. An appointment, therefore, to discharge the duties of a major-general, would have been quite inappropriate.

It is insisted, that the appointment of General Molyneux, was legal, under the provision of the Revised Statutes, chapter 1, title 6, § 42, p. 123. The section enacts that, " The governor may supply all vacancies that may happen, during the recess of the senate, in any office, to which an appointment shall have been made by the governor, with the consent of the senate, except in the office of chancellor, justice of the Supreme Court; * * by granting commissions, which shall expire at the end of twenty days from the commencement of the next meeting of the senate." The appointment of major-general, is, no doubt, an appointment to an office, and it is, certainly, one in which the original appointment is made upon the nomination of the governor, and with the consent of the senate. The answer made to this argument is, that the section in question, although general in its terms, is applicable to civil officers only, and does not include the case of a military officer. Both in the Constitution of the State, and under the statutes, distinct regulations are made for the appointment of military and civil officers, and different rules adopted for each. Thus, in the Constitution, of 1846,

article two regulates the right and mode of voting at the election of civil officers, and providing a different standard of qualification for the white man and the colored man.  Article ten regulates the election and removal of sheriffs and clerks, of certain county officers, by the board of supervisors, and of certain city and town officers; section five, of this article, provides for filling vacancies in office, in general terms. Immediately following, is article eleven, which is devoted to the subject of the militia of the State, providing for their arming, their discipline, and directing who shall compose it, without distinction of color.  Provision is then made for choosing, or appointing, military officers, and, also, for the appointment of all major-generals, and the commissary-general, by the governor and senate, and for certain other military officers, as adjutant-general, and chiefs of staff departments, by the governor, alone.  It would be quite unreasonable to hold that these provisions, respecting civil officers, should be deemed applicable to an election, or tenure, under the different system of military office.

The statutes of the State carry out the same distinction, in detail.  Thus, in title one, of the Revised Statutes, the number, location and classification of the public officers of the State, is given, of which the names and number of the several civil officers, is the first subject.  Provision is made for the number, and election, and duties, and obligations of legislative, judicial, and administrative officers, in subordination to the Constitution.  Oaths of office are provided for, and bonds, and a definition of the duties of various officers.  When these subjects are completed, that of the militia and the public defense is taken up, separately, in chapter ten.  The persons subject to military duty are defined; the election, and appointment of militia officers, and the tenure of their offices, are provided for, in great detail; the enrollment, the organization of the militia; their uniform, and discipline; the organization of staff departments; parades and rendezvous; the holding of courts of inquiry, and courts martial, are provided for.  · This, again, is followed by chapter eleven, in which the

powers, duties, and privileges of towns, including town meet-
ings; the time, purposes, and manner of holding them; the
election and qualification of town officers, and the tenure of
their offices, and the general duties of town officers, are pro-
vided for.

It is in pursuance of this same system of keeping distinct
the statutory regulations, respecting civil and military officers,
that section forty-two (§ 42), relied upon by the appellant,
which provides that the governor may supply all vacancies
that may happen, in the recess of the senate, is placed under
a head, designated thus: " Of the public officers of this State,
other than militia and town officers, their election, or appoint-
ment, their qualifications, and the tenure of their offices."
(Chap. 5, title 1, p. 95.) The power of appointing militia
officers, is, by this heading, expressly excepted from the effect
of this language. It is an explicit declaration, that the
authority, thus conferred, does not reach the case of a
militia officer. The " First Part " of the Revised Statutes,
was adopted, as one entire act, on the 3d day of December,
1827. Its title is, " An act concerning the territorial limits,
and divisions, the civil polity, and the internal administra-
tion of this State." Incorporated into it, and forming a part
of the act, at the time of its passage, are various headings, or
inscriptions of chapters and titles. The first chapter is enti
tled, " Of the boundaries of the State, and its territorial juris
diction;" the second, " Of the civil divisions of the State;"
the third, " Of the census or enumeration of the inhabitants
of the State;" the fourth, " Of the rights of the citizens and
inhabitants of the State;" the fifth, " Of the public officers
of this State, other than militia and town officers, their elec-
tion, or appointment, their qualifications, and the terms of
their offices;" the sixth, " Of elections, other than for militia
and town officers;" the seventh, " Of the legislature;" the
tenth, " Of the militia, and public defense;" in which last
chapter, full provision is made for the appointment and elec-
tion of all military officers. In volume first of the Revised
Statutes, at page 715, is found the following memorandum:

"The preceding twenty chapters, constituting the First Part of the Revised Statutes, were finally passed, as one act, by the senate and assembly, on the 3d of December, 1827, and were, on the same day, approved and signed by De Witt Clinton, governor of the State."

The whole of the First Part of the Revised Statutes, including the definitions given at the heads of the chapters, and title to the subject matter following, was a single statute. Those headings are not titles of the acts, but are parts of the statute, limiting and defining their effect. Especially must this be so held, where the question arises upon the application of the section in question (§ 42, p. 123) to a militia office. The difference on these subjects, throughout the Constitution, and the statutes, is too marked to be disregarded.

The judgment should be affirmed, with costs.

MURRAY, J. The only point for consideration on this appeal is, was the governor authorized by law to make an appointment to supply a vacancy in the office of major-general in the National Guards, of the State of New York, during a recess of the senate. It is insisted, on the part of the defendant, that the governor derives such authority from section forty-two, title six, chapter five, part first of the Revised Statutes (1 R. S., 123), which is:

"The governor may supply all vacancies that may happen during the recess of the senate, in any office to which an appointment shall have been made by the governor, with the consent of the senate, by granting commissions, which shall expire at the end of twenty days from the commencement of the next meeting of the senate."

When this section became a law, major-generals of the militia were appointed by the governor, with the consent of the senate. (Constitution of 1821, art. 4, § 2.)

They are so appointed now. (Constitution of 1846, art. 11, § 3; S. L., 1862, 894, § 49.)

It is not questioned, by the counsel for the people, but what the section is still in force, but it is insisted that it does not

embrace the office of major-general. That presents the only question on which this case turns.

This section is found in the first part of the Revised Statutes, which consists of twenty chapters, and was passed as one act, by the senate and assembly, on the 3d of December, 1827, and, on the same day, approved and signed by De Witt Clinton, then governor of the State (1 R. S., 715; S. L., 1827, pp. 1 and 2); which act is entitled "An act concerning the territorial limits and divisions, the civil polity, and the internal administration of the State." (1 R. S., 61.) It has the following preamble and enacting clause : "Whereas, it is expedient that the several statutes of this State, relating to its territorial limits, its civil polity, and its internal administration, should be consolidated and arranged in appropriate chapters, titles and articles; that the language thereof should be simplified, and that omissions, and other defects, should be supplied and amended; therefore, the people of the State of New York, represented in senate and assembly, do declare and enact as follows." (1 R. S., 61.)

Then follow the twenty chapters, numbered from one to twenty. Each chapter is separately entitled.

Chapter five is entitled " Of the public officers of this State, other than militia; their election or appointment; their qualifications and the tenure of their offices." (1 R. S., 95.)

In this chapter is found the section under consideration. (1 R. S., 123.)

Chapter ten is entitled "Of the militia and the public defence." (1 R. S., 284.)

In this chapter, a section is found providing that the governor, with the consent of the senate, shall appoint all major-generals. (1 R. S., 287, § 1.) No provision is, however, made for supplying a vacancy in that office. But provision is made for supplying a vacancy in the offices of brigadier-generals and field officers. (1 R. S., 288, §§ 11 and 13.) December 4th, 1827, an act was passed, entitled "An act concerning the Revised Statutes passed at the present meeting of the legislature." (S. L., 1827, 2d session, chap. 9, p. 11.)

Section one of that act is as follows: "The act passed at the present meeting of the legislature, entitled 'An act concerning the territorial limits and divisions, the civil policy, and the internal administration of this State,' and divided into chapters, entitled as follows (then follows the precise entitling of each chapter), shall be known and distinguished as the first part of the Revised Statutes of this State."

By section two of this act, chapter ten, entitled "Of the militia and public defence," is made to commence and take effect on the 1st of January, 1828.

By section three, chapter five, entitled "Of public officers, other than militia, &c.," was made to take effect on the 1st of January, 1829.

It will be borne in mind, this is the chapter in which the section under consideration is found.

December 10th, 1828, an act is passed, entitled "An act concerning the Revised Statutes." (S. L., 1828, chap. 20, p. 19.)

By section five of this act, chapter ten, mentioned above, is declared to have commenced and taken effect on the 1st of January, 1828.

By section eight of this act, chapter five, above mentioned, is made to commence and take effect on the 1st of January, 1830.

It is urged, by the counsel for the people, that these several chapters, having been passed as one act, with the entitling over each, that the entitlings became part of the act, and are to be considered as such.

He also insists that the entitling, over chapter five, showed clearly that said section forty-two does not embrace the office of major-general. As acts are usually entitled, the titles are no part of the act. In the Constitution of 1821, which was in force when this section became a law, there is nothing said in regard to the title of an act. In the Constitution of 1846, an enacting clause is required. (Art. 3, § 14.) Section 16, of the same article, provides, "That no *private* or *local* bill, which may be passed by the legislature, shall embrace more than one subject, and that shall be expressed in the title." This relates only to private and local bills, and does not

affect general acts. It is merely descriptive of the act, and entitled to no consideration, in construing the act, except in cases of doubt. In cases of doubt, and ambiguity, it may be referred to, in ascertaining the intention of the law makers. (Smith's Com., p. 698, §§ 556, 557, 558; 1 Kent's Com., 460, 461; *United States* v. *Fisher*, 2 Cranch, 386.).

The character of an act is determined by its provisions and not by its title. (*The People* v. *McCann*, 16 N. Y. R., 58.)

It can hardly be said, that the titles to each of these chapters were enacted and became a part of the acts themselves, because they were placed and stood at the head of those chapters when the act was passed. They were placed there as titles, *in the* usual form, not as parts of the act. They stood there as descriptive of the several chapters embraced in the act. They did not purport to be, and were not, framed as parts of the act. They were, what they were intended to be, appropriate titles, having the same force, and effect, as titles to other acts. There is nothing in the act indicating an intention to give them any other force or effect.

In the act of the 4th of December, 1827 (S. L. of 1827, chap. 9, p. 11), those titles are treated as descriptive of those acts, not as parts. It says: "An act concerning the territorial limits, * *, divided into chapters, entitled as follows, * *, shall be known," &c. It does not say, the acts and titles shall be known, but says, "the act thus entitled shall be known." These titles, therefore, must be regarded as ordinary titles to acts. The title to the act, embracing the twenty chapters, is not inconsistent with the defendant's construction of this section in question, but the title to chapter five is. That indicates that such section has no reference to a military office.

The section is not, of itself, ambiguous. The import of its language is obvious, but, when the body of this whole act is read together, a doubt is created; an uncertainty arises as to what this section embraces. Chapter five, in all its sections, (without referring to this one), refers to civil matters, and has no reference to military matters. Chapter ten relates exclu-

sively to military matters, and constitutes a complete militia system; provides for the election or appointment of all its officers; provides for the appointment of major-generals, with the consent of the senate; provides for supplying a vacancy in the office of brigadier-general, the next in rank below major-general, and does not provide for supplying a vacancy in the office of major-general. It is true, the office of brigadier-general was not filled by appointment of the governor, with the consent of the senate, and, therefore, did not come within this section.

There is no commingling of civil and military affairs together, in these two chapters. They are as if drawn by different hands. It cannot be denied that a doubt arises, as to this section, in the body of this act. In that case, within well settled principles, it is proper to call in the aid of the title to this chapter, and read this section by its light. From that, we conclude, this section does not embrace this office. The fact, that chapter ten was made to take effect January 1st, 1828, and, chapter five, January 1st, 1830, also indicates that there was no relation between the subjects of the two chapters. I do not think it was an accidental omission. I think it was designed, and grew out of the popular fear, then existing, of placing too much military power in the hands of one man. Chapter 28 of the Laws of 1849, does not apply to this office. (*People* v. *Snedeker*, 14 N. Y. R., 52.)

The office of governor is a constitutional office. His powers and duties are prescribed by the Constitution and laws of the State. He is commander-in-chief, of the military forces of the State, made so by the Constitution and laws. The Constitution and laws prescribe what inferior officers there shall be; how they shall be elected, or appointed. He cannot create another or different office; he cannot appoint or cause to be elected, otherwise than therein prescribed.

If I am correct in these views, the judgment should be affirmed, with costs.

All the judges for affirmance. Judgment affirmed, with costs.