THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* PHILIP REALMATO, Appellant.

Argued January 9, 1945; decided March 1, 1945.

46

*Archibald Palmer* and *Samuel Masia* for appellant. I. Section 435–10.1 of the Administrative Code of the City of New York is not applicable to the solicitation of business from a person upon the premises but is limited to solicitation of a passerby upon the street. (*People* v. *Patrick,* 14 N. Y. S. 2d 249; *People* v. *Cuneen,* 94 Misc. 509; *Madison Products Co., Inc.,* v. *Coler,* 242 N. Y. 467.) II. If section 435–10.1 of the Administrative Code should be interpreted to refer likewise to persons on the premises of a storekeper, then the section in that respect violates the constitutional rights of defendant's employer. (*People* v. *Patrick,* 14 N. Y. S. 2d 249; *Coty, Inc., of New York* v. *Hearn Dept. Stores, Inc.,* 158 Misc. 516; *Nebbia* v. *New York,* 291 U. S. 502; *Good Humor Corporation* v. *City of New York,* 33 N. Y. S. 2d 906; *People* v. *Rosenheimer,* 209 N. Y. 115.)

*Thomas Cradock Hughes, Acting District Attorney* (*Fred J. Loughran* of counsel), for respondent. The statute applies to all passersby whether they be on the sidewalk in front of the premises or in the vestibule leading to the store entrance. (*People ex rel. Wood* v. *Lacombe,* 99 N. Y. 43; *Hurst* v. *City of New York,* 55 App. Div. 68; *Psota* v. *Long Island R. R. Co.,* 246 N. Y. 388.)

DESMOND, J. Appellant has been convicted of a violation of section 435–10.1 of the Administrative Code of the City of New York. In the heading of that section the proscribed offense is quite expressively described as the: " Solicitation of pedestrians by pullers-in." Patently, the statute was designed to restrain the zeal of New York City's more militant merchants, who, not content to wait behind their counters for customers, projected their blandishments beyond the confines of their emporia and into the paths of passers-by. The prohibitory part of section 435–10.1 reads as follows: " *Solicitation of pedestrians by pullers-in.* a. It shall be unlawful for any person to stand, or cause or permit any person to stand on the sidewalk or street in front of, or in the entrance or hallway of any store or building for the purpose of calling the attention of passersby to goods, wares or merchandise displayed or on sale in such store or any other store or building, or to solicit patronage for any business or service, or to attempt by word of mouth or gesture, or by the distribution of handbills or other printed matter, or by the use of mechanical or sound making devices, to entice or persuade passersby to enter such store or building, or any other store or building, or to accept the services of any business."

The retail fur shop of appellant's employer, on Fulton Street in Brooklyn, has a wide, deep, entrance vestibule flanked on either side by display windows. The door to the shop is at the inner end of that corridor or way, the outer end being open to the street. The show-windows along the passage are at about right angles to the street front of the building and are a continuation of the show-windows in the facade. To see the whole array of furs and do a complete job of " window-shopping ", one has to walk into the window-sided passageway which is part of the shopkeeper's premises. On a November morning in 1943 two women, standing in the entrance arcade and inspecting some of the fur coats on display, were approached by appellant, a salesman, who asked one of them whether she was interested in a fur coat. Upon being told that she was not, he asked permission to show her a few coats, motioned her into the store, followed her in, and was promptly presented with a summons by the putative shopper, who was a policewoman not in uniform. The question for us, answered " yes " by the Magistrate and by the Court of Special Sessions on appeal from

the Magistrate's Court, is as to whether the salesman, on those facts, was properly held to have violated the Administrative Code section quoted above.

We answer that question in the negative. We do not think the City Council intended to make criminal such activities as those of defendant. Complainant, when accosted by this defendant, was on the premises of the latter's employer, not on a public thoroughfare. She had turned from the sidewalk, crossed the building line and entered into what was plainly marked out as part of a shop. The shopkeeper's name and business were painted in large letters on the inner pavement on which she stood as she admired his wares. The Court of Special Sessions was of the opinion that the vestibule was not part of the store proper but that, open as it was day and night, its use had been " to some extent dedicated to the public." So is the open lobby of a theatre or hotel, but we do not think an owner, by thus constructing his building, makes it so much a part of the public highway that he can be prohibited from peacefully carrying on his own lawful business therein. Carrying the idea of " dedication to the public use " to its logical end, we would have to conclude that a shopkeeper who chose to have no door or outside wall at all but left the whole shop open to the street, could not solicit business therein. We think a great deal more than this special type of modern store front design is necessary to turn a business place into an arm or branch of the public street.

The lawmakers, in our view, intended to accord the protection of the statute to those persons only who were on the public street or sidewalk and not to those who had already entered into a quasi-customer relationship by turning from the street into some part of the business premises. In the only reported cases construing this particular ordinance (*People* v. *Phillips,* 147 Misc. 11; *People* (*Crennan*) v. *Patrick,* 171 Misc. 705; *Matter of Dinino,* N. Y. L. J., Dec. 14, 1939, p. 2138, col. 2) the courts seem to have traveled on the assumption that only persons in the streets were protected from the importunities of the " pullers-in." In *People* v. *Patrick* (*supra*), the magistrate spoke of the law as prohibiting interference with " peaceful use of the city streets " and pointed out that " it was never intended that the city streets should be used for carrying on

business or for the purpose of inducing business '' (see, also, *McKay Jewelers, Inc.*, v. *Bowron*, 19 Cal. 2d 595, where a similar ordinance was assumed to mean, by the use of the word '' passersby '', people on the sidewalk or street). Our attention is called to a number of cases enforcing city ordinances, in other States, which outlawed the activities of '' touts '' or '' runners '' but in none of those cases, so far as we can find, was there any effort to apply the law against a merchant crying his own wares in his own establishment. (See *The City of Chillicothe* v. *Brown*, 38 Mo. App. 609; *Wright* v. *City of Anniston*, 26 Ala. App. 109; *City of Emporia* v. *Shaw*, 6 Kan. App. 808; *Henderson* v. *Bluefield*, 98 W. Va. 640.) The City's brief in this case does not seriously dispute all this but argues that the place of this occurrence was, because of dedication or use, subject to regulation just like a street. We cannot agree. It would be going much too far to say that this defendant's acts had anything whatever to do with anyone's use of the public streets.

Going to the precise wording of this statute, we hold that complainant here was not a '' passerby '' or '' pedestrian '' as she stood in the vestibule, looking over the garments on display, and that defendant, in persuading her to enter the store, was not a '' puller-in.'' '' Passersby '' and '' pedestrians '' are not words of precise definition but they have to be stretched pretty far before they can refer to those who have deviated from the line of street travel and turned into a place owned and occupied for private business purposes. The use of the word '' pullers-in '' in the statute's heading, which heading we may use as an aid to construction (*People* v. *Molyneux*, 40 N. Y. 113, 119), is more illuminating. '' Puller-in '' has a dictionary meaning of '' a man who stands in front of a cheap shop, place of entertainment, or the like, and urges passers-by to enter, sometimes laying hold of them '' (Webster's New International Dictionary [2d ed.], unabridged, 1942). From the whole language, including the heading, of the statute here under scrutiny, we conclude that it was not intended to interdict peaceful, orderly solicitation by a merchant of persons who have entered such a vestibule on the merchant's private property.

We are the more inclined to such a construction because, if read so as to make criminal the acts proven in this case, the law would be of very doubtful constitutionality. We do not of course go so far as did the California Supreme Court in *McKay* v. *Bowron* (*supra*), when it held that such an ordinance, even as applied to merchants who from their hallways peacefully solicited window-gazers standing in the street, was unconstitutional as infringing the constitutional guaranty of freedom of speech. Grounds there may be, under the City's power to regulate the use of its streets (see State Const., art. IX, § 12; City Home Rule Law, § 11, subd. 1, cl. [b]; *People ex rel. Hofeller* v. *Buck,* 230 N. Y. 608) or under general police powers, for the prohibition by an enactment such as this, of the molestation of travelers on the city streets. We are not advised, however, of any basis for validating such a statutory prohibition of essentially orderly and reasonable conduct by a merchant on his own land.

The judgments should be reversed and the complaint dismissed.

LEHMAN, Ch. J., LOUGHRAN, LEWIS, CONWAY, THACHER and DYE, JJ., concur.

Judgments reversed, etc.