**THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v JOSEPH HALL, Defendant.**

Criminal Court of the City of New York, New York County, January 27, 1989

**APPEARANCES OF COUNSEL**

*Joseph Hall,* defendant *pro se.*

**OPINION OF THE COURT**

EMILY JANE GOODMAN, J.

According to a 1939 New York City ordinance, "[i]t shall be unlawful for any person to stand, or cause or permit any person to stand on the sidewalk or street in front of, or in the entrance or hallway of any store or building for the purpose of calling the attention of passersby to goods, wares or merchandise displayed or on sale in such store or building, or to solicit patronage for any business or service, or to attempt by word of mouth or gesture, or by the distribution of handbills or other printed matter, or by the use of mechanical or sound making devices, to entice or persuade passersby to enter such store or building, or any other store or building, or to accept

the services of any business." (Administrative Code of City of New York § 10-115 [formerly § 435-10.1].)

The defendant in this prosecution by summons* was charged with two violations of Administrative Code § 10-115 when the police allegedly observed the defendant stop passersby, engage them in conversation, and solicit pedestrians by attempting to bring them into a store for the purpose of a sale. The police concede that no contraband or illegal merchandise is involved.

The sole issue in these two cases is whether these summonses should be dismissed on the grounds that Administrative Code § 10-115 violates the First Amendment protection of speech. It should be noted at the outset that this ordinance and this case in no way involve the issue of street vending.

Surprisingly, over the last 50 years there has been little litigation involving this ordinance. In the seminal case, *People v Realmato* (294 NY 45 [1945]), the Court of Appeals declined to address the constitutionality of section 435-10.1 but chose instead to focus on the narrower issue of whether the statute prohibited the solicitation of persons standing within an outdoor vestibule flanked on either side by display windows of the store where the "puller-in" was employed. Holding that this area was part of the store premises, the court ruled that such persons were not "pedestrians or passersby" within the meaning of the statute. *(Supra.)* The Court of Appeals went on to say: "We are the more inclined to such a construction because, if read so as to make criminal the acts proven in this case, the law would be of very doubtful constitutionality. We do not of course go so far as did the California Supreme Court * * * when it held that such an ordinance, even as applied to merchants who from their hallways peacefully solicited window-gazers standing in the street, was unconstitutional as infringing the constitutional guaranty of freedom of speech. Grounds there may be, under the City's power to regulate the use of its streets * * * or under general police powers, for the prohibition by an enactment such as this, of the molestation of travelers on the city streets. We are not advised, however, of any basis for validating such a statutory prohibition of essentially orderly and reasonable conduct by a merchant on his own land." *(Supra,* at 50; *see also, People v Lewis,* 185 Misc 364 [1945] [barkers on Coney Island calling out to pedestrians

---

* The District Attorney's office does not appear for the People in the Summons Part. As is also typical in this part, no defense attorney appeared.

held not "pullers-in" where pedestrians not personally accosted or approached].)

A constitutional challenge on the grounds of arbitrariness, discrimination, vagueness and indefiniteness was unsuccessful in *People v Patrick* (171 Misc 705, 706) where the statute was upheld as a valid exercise of the city's police power to promote public convenience and general prosperity. However, whether the statute was unconstitutional on First Amendment grounds was not in issue in *Patrick.*

Thus, it appears that this is a case of first impression. Freedom of speech and freedom of the press, which are protected by the First Amendment from infringement by Congress, are among the fundamental personal rights and liberties which are protected by the Fourteenth Amendment from invasion by State action. *(Lovell v Griffin,* 303 US 444, 450.)* Municipal ordinances adopted under State authority constitute State action and are within the prohibition of the amendment. *(Supra.)* There is, of course, a strong presumption of the constitutionality of a statute. (McKinney's Cons Laws of NY, Book 1, Statutes § 150.) However, a statute which clearly conflicted with the protection afforded by the First Amendment would of course be invalid.

By prohibiting words, gestures, printed matter or sound devices aimed at persuading pedestrians to patronize or accept services of a business, this statute seeks to regulate speech. Specifically, the statute seeks to regulate commercial speech in that it is aimed at expression whose primary purpose is to invite a commercial transaction. *(See, Central Hudson Gas & Elec. v Public Serv. Commn.,* 477 US 557, 561 [1980].)

The protection afforded by the First Amendment to commercial speech has undergone a long evolution of interpretation. Originally of the view that commercial speech should be afforded no protection *(e.g., Valentine v Chrestensen,* 316 US 52, 54 [1942]), the United States Supreme Court gradually moved away from such an interpretation of the scope of the First Amendment *(see, e.g., New York Times Co. v Sullivan,* 376 US 254; *Pittsburg Press Co. v Human Relations Commn.,* 413 US 376 [1973]), and eventually held the purely commercial speech when not deceptive or misleading is in fact protected speech because of its value to individual consumers and the general public. *(Virginia Pharmacy Bd. v Virginia Consumer Council,* 425 US 748 [1976].)

In *Central Hudson Gas & Elec. (supra)* the United States

Supreme Court set forth a four-part analysis for determining whether a statute restricting commercial speech is an unconstitutional infringement on First Amendment rights. "At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest." *(Supra,* at 566.)

Applying this analysis to the statute here, it is clear, in light of the Supreme Court decisions discussed above, that the conduct proscribed by Administrative Code § 10-115 falls within the type of expression protected by the First Amendment. The statute does not seek to regulate only commercial speech that is false, misleading or deceptive nor commercial speech which advertises or promotes unlawful activity. Rather it seeks to ban all commercial advertising where pedestrians are solicited by pullers-in to patronize a business or service.

This is not to say that there is no substantial government interest served by this regulation. The statute is intended to prohibit interference with the peaceful use of the city streets *(People v Realmato, supra,* at 48). The State's interest in promoting public convenience as well as preserving the peace is well within the legitimate police powers of the State. *(People v Patrick, supra,* at 706-707.)

Moreover, "[m]unicipal authorities, as trustees for the public, have the duty to keep their communities' streets open and available for movement of people and property, the primary purpose to which the streets are dedicated." *(Schneider v State,* 308 US 147, 160 [1939].) However, this power to regulate the use of city streets is not absolute. "So long as legislation to this end does not abridge the constitutional liberty of one rightfully upon the street to impart information through speech or the distribution of literature, it may lawfully regulate the conduct of those using the streets." *(Supra,* at 160.) While plausible arguments can be made that a ban on this type of solicitation of pedestrians may advance the government's interest in the peaceful use of city streets, Administrative Code § 10-115 is not narrowly tailored. The ordinance is not limited to conduct that interferes with the use of city streets, or even conduct that promotes littering of the streets.

Instead, it is a total prohibition of the use of the city streets and sidewalks for a particular type of solicitation. The ordinance could possibly have solved this problem by specifying hours when the activity complained of might indeed interfere with the use of the city streets, for example, during the morning or evening rush hours. The ordinance could also have limited the prohibition to areas of the city where traffic might be greater than in other areas.

In invalidating a city ordinance banning the distribution of any literature or advertising without prior permission, the United States Supreme Court in *Lovell v Griffin* (303 US, *supra,* at 451) found a violation of the First Amendment on the grounds that the ordinance was "comprehensive with respect to method of distribution. It cover[ed] every sort of circulation 'either by hand or otherwise.' There [wa]s thus no restriction in its application with respect to time or place. It [wa]s not limited to ways which might be regarded as inconsistent with the maintenance of public order or as involving disorderly conduct, the molestation of the inhabitants, or the misuse or littering of the streets. The ordinance prohibit[ed] the distribution of literature of any kind at any time, at any place, and in any manner without a permit from the City Manager."

Administrative Code § 10-115, while aimed only at advertising, is equally lacking in any time, place or manner restrictions. While such a statute may have been proper in an era where commercial speech was held to have no constitutional protection, the same cannot be true today. Absent a narrowly tailored ban on street solicitation, the statute is more extensive than is necessary to promote the State's legitimate interest.

For the foregoing reasons, I find that Administrative Code § 10-115 satisfies the first three parts of the *Central Hudson Gas* test in that the ordinance concerns lawful activity, seeks to address a substantial government interest and directly advances that interest. However, the ordinance is more extensive than necessary to serve this interest and thus fails to satisfy the fourth part of that test. "[L]egislative preferences or beliefs respecting matter of public convenience may well support regulation directed at other personal activities, but be insufficient to justify such as diminishes the exercise of rights so vital to the maintenance of democratic institutions." *(Schneider v State, supra,* at 161.) Administrative Code § 10-115 diminishes the exercise of freedom of speech and nega-

tively impacts society's interest in the "free flow of commercial information". *(Virginia Pharmacy Bd. v Virginia Consumer Council, supra,* at 765.) Because this ordinance is over-extensive, it is not constitutionally valid. Therefore, the charges against the defendant are dismissed.

In light of the foregoing, it is unnecessary to discuss the selective prosecution which this court views as arguably implicit in these prosecutions.